N. A. ANDRETTA, Petitioner,

v.

W. E. WEST et ux., Respondents.

No. A–11539.

Supreme Court of Texas.

May 24, 1967.

Rehearing Denied June 21, 1967.

Edward Kliewer, Jr., and Joe T. Hood, Dallas, for petitioner.

Wynne & Wynne, Gordon Wynne, Wills Point, for respondents.

WALKER, Justice.

On the principal question presented by this appeal, we hold that the owner of a non-participating royalty interest is entitled, under the terms of his deed, to share in compensatory royalty payments made pursuant to an agreement between the lessee and the holder of the executive rights.

Mr. and Mrs. W. E. West, respondents, owned 100 acres of land. On September 4, 1942, they executed an oil, gas and other mineral lease on the property for a primary term of ten years and as long thereafter as production from the land continued. The lease provided for the usual one-eighth royalties on oil and gas, and stipulated that in the absence of drilling the lease would terminate unless a delay rental of $250.00 was paid annually. Superior Oil Company subsequently acquired the lessee's interest. On March 22, 1943, respondents conveyed an undivided one-fourth non-participating royalty interest to S. H. Jenkins, and this interest was acquired by N. A. Andretta, petitioner, several days later.

There was never any production from the land. On August 31, 1944, respondents and Superior made the agreement which gave rise to the present suit. Most of the provisions of this instrument are quoted in the opinion of the Court of Civil Appeals. It recites that Superior had drilled a producing well on the land adjoining the West property, that a dispute existed between respondents and Superior as to whether the latter was obligated to drill an offset well on the 100-acre tract, and that the parties had composed their differences in the manner therein provided. Superior then agreed to pay respondents monthly "a lieu royalty in cash equivalent to one-eighth (⅛) of the proceeds from the sale of all oil produced and sold from" the well on the adjoining tract. It was further stipulated that such payments should be construed to be royalty payments made to lessor under the terms of the 1942 lease, that the beginning of operations for the drilling of a well on the 100-acre tract would relieve Superior of any obligation to make the payments, that Superior would have the right at any time to discontinue the payments by surrendering the lease in its entirety, and that the agreement "is an amendment of said lease, effective for the sole purpose of maintaining said lease in full force and effect during the performance of the agreements, terms and conditions hereinabove set forth, for the time and in the manner herein provided." It is admitted that the lease continued in force until it was surrendered by Superior in July, 1957.

Pursuant to the terms of the 1944 amendment, which was promptly recorded, Superior paid a total of $27,978.16 to respondents during the period from August 1, 1944, to May 31, 1957. No payments were made to petitioner by either Superior or respondents. Petitioner did not learn of the amendment to the lease or the payments made to respondents until a few months before the present suit was filed. He originally sued respondents and Superior to recover one-fourth of the amount so received by respondents.

In an appeal from the order sustaining respondents' plea of privilege, it was held that petitioner has no cause of action against Superior because he did not give no-

tice of his interest as required by the terms of the lease. Andretta v. West, Tex.Civ. App., 318 S.W.2d 768 (wr. ref. n. r. e.). Petitioner then abandoned his suit against Superior and proceeded against respondents. The trial court concluded that petitioner has no cause of action against respondents, and that even if he did his claim would be barred by the two-year statute of limitations. Judgment was accordingly rendered that petitioner take nothing, and the Court of Civil Appeals affirmed. The intermediate court agreed with the first conclusion of the trial court and did not reach the limitation question. 402 S.W.2d 543.

■ Respondents contend, and the Court of Civil Appeals held, that the payments under the 1944 amendment were rentals rather than royalty. We do not agree. The instrument discloses on its face that there was a difference between the parties as to whether Superior was under a duty to drill an offset well on the leased premises. To settle this dispute they created a money substitute for actual production from the well which the lessee might have been compelled to drill. The monthly payments were based on production from the well on the adjoining property, which is characteristic of a "lieu" or "compensatory" royalty. It was agreed that the payments would maintain the lease in force even beyond the primary term, and this could not be accomplished by the payment of delay rentals. The parties further stipulated that payment of the compensatory royalty might be discontinued upon surrender of the entire lease, whereas the lease itself gave the lessee the right to relinquish part of the land and pay delay rentals on the remainder. It was also provided in the 1944 amendment that the payments should be construed to be royalty payments under the lease, and that the agreement was an amendment to the lease. We recognize that calling the payments royalty is not conclusive as to their true nature, but words of art are given considerable weight in determining the intention of the parties. Delta Drilling Co. v. Simmons, 161 Tex. 122, 338 S.W.2d 143;

Morriss v. First National Bank of Mission, Tex.Civ.App., 249 S.W.2d 269 (wr. ref. n. r. e.). In this instance the basis and agreed effect of the payments are such that the same constitute royalty and not delay rentals, and the descriptive term used by the parties is entirely accurate. See Morriss v. First National Bank of Mission, supra; Moses, "In Lieu" Royalty Agreements in the Oil Industry, 3 Houston Law Review 84.

The Court of Civil Appeals also held that under the terms of the royalty deeds, petitioner is not entitled to share in the payments even though the same do constitute royalty. It relied on cases such as Archer County v. Webb, 161 Tex. 210, 338 S.W.2d 435, and Campbell v. Dreier, Tex.Civ.App., 382 S.W.2d 179 (wr. ref. n. r. e.), where it was held that payment of shut-in gas royalty as provided in an oil and gas lease did not maintain a term royalty interest held under a deed stipulating that the same should continue so long as oil or gas was produced from the land. In each case the court pointed out that the duration of a term royalty is ordinarily governed by the provisions of the deed and not by the terms of a mineral lease on the same land, but neither of these decisions is persuasive here.

The granting clauses of the royalty deeds in the present case purport to convey "an undivided one-fourth interest in and to all of the oil royalty, gas royalty, and royalty in casinghead gas, gasoline, and royalty in other minerals in and under, and that may be produced and mined from" the 100-acre tract. It is unnecessary to determine the effect of this language, because the instruments also refer to the existing lease and provide that the sale "covers and includes the same percent interest as first hereinabove named, of all the oil royalty and gas royalty and casinghead gas and gasoline royalty, and royalty from other minerals or products, due and to be paid under the terms of said lease." The latter provision entitles petitioner to one-fourth of all royalties payable under the lease, including the substitute royalty paid in accordance with the 1944 amendment. See Woods v. Sims, 154 Tex.

59, 273 S.W.2d 617; Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563; Hoffman v. Magnolia Petroleum Co., Tex.Com.App., 273 S.W. 828.

Respondents say that petitioner must look to Superior for payment of his share of the compensatory royalty. In support of this contention they cite Evans v. Opperman, 76 Tex. 293, 13 S.W. 312, and Patton v. Mitchell, Tex.Civ.App., 13 S.W.2d 146 (no writ). These cases hold that where there is no fiduciary relationship or privity of contract between claimants to a fund and one of them is paid by the person from whom it is due, the law will not imply an obligation on the part of the claimant who receives the money to hold the same for the other claimant. Our situation here is quite different. Respondents conveyed the royalty interest to petitioner's grantor, and agreed that the holder of such interest should receive one-fourth of all royalty paid under the terms of the Superior lease. We have then both privity of contract and, as pointed out below, a confidential relationship between the parties.

In somewhat analogous situations, it is generally held that a vendor must account to his vendee for rents collected by the former which rightfully belong to the latter. See Rives v. James, Tex.Civ.App., 3 S.W.2d 932 (wr. dis.); Bandel v. Sabine Lumber Co., 194 La. 31, 193 So. 359; Beckwith v. Clark, 8th Cir., 188 F. 171; 7 Williston, Contracts, 3rd ed. 1963, § 938. A cotenant who receives rent from a third person for use of the entire property is accountable to the other tenants in common for their shares. See Cline v. Niblo, 117 Tex. 474, 8 S.W.2d 633, 66 A.L.R. 916; Sayers v. Pyland, 139 Tex. 57, 161 S.W.2d 769, 140 A.L.R. 1164; 20 Am.Jur.2d Cotenancy and Joint Ownership, § 40. The surface owner is liable to the State for the latter's share of bonus and rentals paid such owner by the lessee under a lease on mineral classified land. Shell Petroleum Corporation v. Tippett, Tex.Civ.App., 103 S.W.2d 448 (wr. ref.). We hold that in view of the relationship between the parties to the present case, respondents are accountable to petitioner for the latter's one-fourth of the compensatory royalty payments. See Restatement of Restitution, § 125. This brings us to the limitation question, which involves a consideration of the relationship existing between the parties.

An amicus curiae suggests that this case presents an appropriate opportunity to define the precise standard of conduct required of the holder of the executive right. We are here concerned with a relatively narrow aspect of that problem. Since no attack is made on either the original lease or the 1944 amendment, it is unnecessary to determine whether respondents violated any duty to petitioner in the execution of these instruments.

The holder of the executive right has the power to make and amend leases affecting the enjoyment of a non-participating royalty interest owned by another. It was in the exercise of such power that respondents amended the lease to provide that the same might be maintained by the payment to them of the full compensatory royalty. The owner of a non-participating royalty interest would not ordinarily learn of such an arrangement unless he was advised by one of the parties. When we consider the power entrusted to respondents and their superior knowledge, it is clear to us that they were in a confidential relationship with petitioner in so far as the lease amendment and the payments thereunder are concerned.

We are not prepared to say, on the facts developed in the present case, that respondents were under an absolute obligation to search the records and determine the name and address of the person entitled to the royalty under their deed to Jenkins. If they knew the name and whereabouts of the royalty owner, it was their duty to notify him of the lease amendment and account to him for his share of the payments as received. See Cobb v. First National Bank, 91 Tex. 226, 42 S.W. 770; Baker v. Cook, Tex.Com.App., 15 S.W.2d 600. If they did

not know his name and address, they nevertheless are chargeable in equity as constructive trustees with the duty to hold one-fourth of the royalty subject to the demand of the rightful owner. See Pomeroy, Equity Jurisprudence, 5th ed. 1941, § 1047.

 The statute of limitations began running against petitioner when he learned that respondents had received and were claiming royalty to which he is entitled or when he had information that would have led a person of ordinary prudence to a discovery of the facts. Bogert, Trusts and Trustees, 2nd ed. 1962, § 953. That is the effect of the rule as stated in Cole v. Noble, 63 Tex. 432, and Wilson v. Simpson, 80 Tex. 279, 16 S.W. 40, where the court said that while the statute will begin to run in favor of a constructive trustee from the time the plaintiff could have indicated his right by action or otherwise, the trustee must bring himself clearly within the position of a continued and adverse claimant and the plaintiff must have no reasonable excuse for failing to prosecute his claim within the proper time. See Collins v. Griffith, Tex. Civ.App., 125 S.W.2d 419 (wr. ref.). Petitioner did not learn of the lease amendment or the payments to respondents until shortly before he instituted suit. His only sources of information were respondents, Superior, and the recorded lease amendment. He was not charged with constructive notice of the amendment, which was executed and recorded after he acquired his royalty interest. See Article 6631, Vernon's Ann.Tex. Civ.Stat.; White v. McGregor, 92 Tex. 556, 50 S.W. 564. There was no occasion for him to search the records or make inquiry of either respondents or Superior when he did not know or have any reason to suspect that they had agreed upon monthly cash payments as a substitute for production from the leased premises. He did write Superior in 1945 advising that he owned the royalty interest and asking whether the company contemplated drilling on the West tract. The company replied that it had no plans to do any additional drilling in the area but did not mention the lease amend-

ment or the payments to respondents. In our opinion petitioner's cause of action is not barred by the statute of limitations.

The judgments of the courts below are accordingly reversed, and the cause is remanded to the district court with instructions to enter judgment for petitioner.