**HECI EXPLORATION COMPANY
and Browning Oil Company,
Inc., Petitioners,**

v.

**Russell H. NEEL, Sr., Russell H. Neel,
Jr., LeRoy K. Neel, and Kathleen
Neel Insall, Respondents.**

No. 97–0403.

Supreme Court of Texas.

Argued Jan. 6, 1998.

Decided Oct. 29, 1998.

Rehearing Overruled Feb. 4, 1999.

Michael E. McElroy, Harlan Hentges, Pamela Stanton Baron, Austin, for petitioners.

Harvey F. Cohen, Austin, for respondents.

OWEN, Justice, delivered the opinion of the Court.

This is a suit by royalty owners against their lessee. The court of appeals reversed in part a summary judgment for the lessee, holding that an oil and gas lease includes an implied covenant that a lessee will notify royalty interest owners (1) of the need to sue an operator on an adjoining lease for damage to the common reservoir, and (2) that the lessee intends to sue. 942 S.W.2d 212. The court of appeals further concluded that the discovery rule applies to causes of action against a lessee who fails to provide these notices.

We do not reach the question of whether a covenant to notify royalty owners of the need to sue should be implied in mineral leases because limitations has barred the claims based on such an implied covenant, if any, and the discovery rule does not apply. However, we hold that there is no implied covenant that requires a lessee to give notice of its intent to sue an adjoining operator because such a duty is not necessary to effectuate the full purpose of the lease and is not so clearly within the contemplation of the parties that they deemed it unnecessary to express it. Accordingly, we reverse the judg-

ment of the court of appeals in part and render judgment that the respondents take nothing.

## I

Russell H. Neel, Sr. and members of his family own royalty interests pursuant to the terms of an oil and gas lease that covers property in Fayette County. The lessee was HECI Exploration Company and subsequently its successor in interest under the lease, Browning Oil Company, Inc., to whom we will refer as HECI unless otherwise indicated. The Neels sued HECI in 1993 because it did not notify them that it had sued and obtained a judgment against the operator of an adjoining lease, AOP Operating Corporation.

A common reservoir underlies both the HECI and AOP leases. Since at least 1985, AOP periodically overproduced a well in that reservoir in violation of rules promulgated by the Texas Railroad Commission. HECI took appropriate action at the Commission, and overproduction was halted for a time. But in late 1987, one of HECI's wells, the Allison number 1, began to produce water. HECI thought that this was premature given the well's location in the oil and gas formation, and HECI investigated the cause of the water encroachment. HECI ultimately determined that AOP was again illegally producing. HECI instituted further proceedings at the Railroad Commission, and eventually, AOP was enjoined. However, the illegal production lasted from April 1987 until December 1988 and resulted in the permanent loss of oil and gas reserves that otherwise could have been recovered through HECI's well. Although the decision of the court of appeals in this case at times refers to drainage by AOP, the record reflects that the Neels' injury was not the result of drainage. The reservoir itself was damaged because production by AOP at excessive rates caused oil to migrate into the gas cap overlying the oil reserves, which diminished the amount of oil and gas that can be recovered.

HECI filed suit against AOP in Fayette County in 1988. After a jury trial, the trial court rendered judgment against AOP in May 1989, awarding HECI actual damages in the amount of $1,719,956 and $2,000,000 in punitive damages. The trial court also granted permanent injunctive relief. The suit between HECI and AOP was thereafter settled, and a release of the judgment was filed of record in Fayette County in September 1989.

The Neels did not learn of the suit between HECI and AOP until May 1993. They sued HECI in December 1993, more than four years after the release of judgment against AOP was filed of record and more than four years after the damage to the reservoir occurred. The Neels alleged that the discovery rule should apply to forestall the application of statutes of limitations to their claims. The causes of action alleged by the Neels included: breach of contract, for which they sought a 1/6 royalty based on the amount of the judgment against AOP; negligent misrepresentation because of HECI's failure to disclose information about either the illegal production or the suit; breach of an implied covenant to protect against drainage that was alleged to include an obligation of HECI to sue AOP on behalf of the Neels; and unjust enrichment for retaining compensation from AOP that was attributable to the Neels' interest.

HECI Exploration Company filed a motion for partial summary judgment, which the trial court granted in part, and a subsequent motion for summary judgment, which was granted in its entirety. Although Browning had not filed any motions for summary judgment, the parties stipulated that summary judgment would have been rendered in its favor had it requested that relief. A final judgment disposing of all parties and all claims was rendered after counterclaims were severed from the Neels' claims. The Neels appealed.

The court of appeals handed down and withdrew three successive opinions before issuing the decision and judgment from which HECI now appeals. 942 S.W.2d 212. That court ultimately held that an implied covenant to notify exists but that it is not as broad as the Neels had urged. *Id.* at 218. The court of appeals held that a lessee such as HECI who lacks authority to sue for all interest owners is obligated to notify other

interest owners of the need to sue an adjoining operator and of the lessee's intent to sue. *Id.* The court of appeals concluded that such a duty is encompassed within the implied covenant to protect the leasehold. *Id.* It reasoned that, although HECI had no right and thus no obligation to sue on behalf of the Neels, a covenant to notify should be implied because if HECI were to bring suit, the Neels could be collaterally estopped from litigating their claims against AOP. *Id.* at 217.

The court of appeals further held that the Neels did not have a cause of action under the royalty provisions of their lease for 1/6 of the judgment HECI obtained against AOP because that judgment awarded damages based on the diminution in value of the reserves in place, not the value of production. *Id.* at 219. However, the court of appeals held that the Neels' other causes of action— which were breach of an implied covenant to notify, negligent misrepresentation, and unjust enrichment—were viable and that the discovery rule applied. *Id.* at 223. The court of appeals accordingly reversed the trial court's judgment in part and remanded these latter claims for trial, holding that HECI had not conclusively established that the Neels knew or in the exercise of reasonable diligence should have known of their injury. *Id.* at 222–23. HECI filed an application for writ of error in this Court, which we granted.

## II

The implied covenant that the court of appeals found to exist embodies two notice requirements that are triggered once a lessee determines that a suit for damages against an adjoining operator is necessary. 942 S.W.2d at 218. The lessee must give notice (1) of the need for suit, and (2) of the lessee's intent to sue. We first address in Part III whether limitations bars the claim that HECI breached a duty to notify the Neels that they had reason to sue AOP. Because we conclude that the discovery rule does not apply and that the Neels' claims are barred, we do not reach the issue of whether an implied covenant to notify of the need to sue exists under Texas mineral leases. That

is a question of first impression for this Court, and we leave it for another day. In Part IV, we consider why the law of Texas regarding implied covenants in mineral leases does not support the creation of a duty that would require a lessee to notify royalty owners of its intent to sue adjoining operators. Finally, in Part V, we consider the unjust enrichment claim.

## III

■ The court of appeals correctly observed, and the Neels concede, that absent application of the discovery rule, a four-year statute of limitations would bar the claims for breach of implied contractual covenants, *see Amoco Prod. Co. v. Alexander,* 622 S.W.2d 563, 571 (Tex.1981), a two-year statute would bar the claims for negligent misrepresentation, *see Milestone Properties, Inc. v. Federated Metals Corp.,* 867 S.W.2d 113, 118–19 (Tex.App.—Austin 1993, no writ), and a two-year statute would bar the claim for unjust enrichment, *see Cherokee Water Co. v. Advance Oil & Gas Co.,* 843 S.W.2d 132, 135 (Tex.App.—Texarkana 1992, writ denied). Before we examine whether the discovery rule applies to cases of this type, we note that we do not agree with the court of appeals that the contract and negligent misrepresentation causes of action accrued on the date that HECI sued AOP. *See* 942 S.W.2d at 220. Any causes of action based on a duty to notify the Neels that they had a claim against AOP accrued contemporaneously with the Neels' causes of action against AOP for damage to the reservoir; the alleged duty to notify would arise when the cause of action against AOP arose. AOP's illegal overproduction had ceased by December 1988, and a cause of action against HECI for failure to notify the royalty owners of claims they had against AOP accrued by that date at the latest. (To resolve the issues in this case, we need not decide whether the injury to the Neels was permanent or temporary and the effect, if any, that distinction may have on limitations. *Compare Mitchell Energy Corp. v. Bartlett,* 958 S.W.2d 430, 436 (Tex.App.— Fort Worth 1997, writ denied) (discussing discovery rule when injury to water well was found to be a permanent injury to real property), *with Apache Corp. v. Moore,* 891

S.W.2d 671, 679–80 (Tex.App.—Amarillo 1994, writ denied) (holding that injury to royalty interest was a temporary injury), *vacated on other grounds*, 517 U.S. 1217, 116 S.Ct. 1843, 134 L.Ed.2d 945 (1996) (mem.).) The Neels did not sue HECI until December 1993, more than four years after December 1988.

The discovery rule has been applied in limited categories of cases to defer accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action. *See Computer Associates International, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996). Historically, the reasoning that supported this Court's decisions to apply the discovery rule in particular cases was "diverse, somewhat inconsistent, and often overly broad." *S.V. v. R.V.*, 933 S.W.2d 1, 5–6 (Tex.1996). We attempted to bring predictability and consistency to our jurisprudence in this area in *Altai*, 918 S.W.2d at 455–56, and *S.V. v. R.V.*, 933 S.W.2d at 5–6. In those decisions, we articulated two unifying principles that generally apply in discovery rule cases. They are that the nature of the injury must be inherently undiscoverable and that the injury itself must be objectively verifiable. *See Altai*, 918 S.W.2d at 456; *S.V.*, 933 S.W.2d at 6. We explained in *Altai* that the applicability of the discovery rule is determined categorically. Although the particular injury in *Altai* may not have been discovered, it was the type of injury that generally is discoverable by the exercise of reasonable diligence: "While some trade secret misappropriations might not be quickly discovered, this isolated fact does not alter the reality that, in most cases, trade secret misappropriation generally is capable of detection within the time allotted for bringing such suits." 918 S.W.2d at 457.

■ The first question we must decide in this case is whether the failure of HECI to notify the Neels is the type of injury that is inherently undiscoverable. We hold that it is not. When a failure to notify is the basis for a cause of action, a plaintiff knows or should have known of the failure to notify when it knows or should have known the facts about which it was to be notified. Thus, when the

Neels knew or should have known that they had a cause of action against AOP, they knew or should have known that HECI had not told them of that claim. The Neels' cause of action against AOP for damage to the reservoir from illegal production is not the type of injury that is inherently undiscoverable. Accordingly, HECI's failure to notify the Neels of the existence of such a cause of action is not within a category of claims to which the discovery rule should be applied.

■ As owners of an interest in the mineral estate, the Neels had some obligation to exercise reasonable diligence in protecting their interests. This includes exercising reasonable diligence in determining whether adjoining operators have inflicted damage. Royalty owners cannot be oblivious to the existence of other operators in the area or the existence of a common reservoir. In some cases, wells visible on neighboring properties may put royalty owners on inquiry. In any event, a royalty owner should determine whether a common reservoir underlies its lease because it knows or should know that, when there are other wells drilled in a common reservoir, there is the potential for drainage or damage to the reservoir.

One source of information about the existence of a common reservoir and operations in it would be the lessee. Although we determine whether the discovery rule applies to particular types of cases rather than to a particular case, we note that HECI gave the Neels whatever information they wanted when asked. Of course, if an operator fraudulently concealed information from a lessee, decisions of this and other courts indicate that limitations may be tolled. *See generally S.V.*, 933 S.W.2d at 4 (discussing decisions regarding fraudulent concealment).

■ Records about operations in a common reservoir are also generally available at the Railroad Commission. We do not suggest, as urged by HECI, that all records maintained by the Railroad Commission constitute constructive notice to royalty owners of their content, as is the case with recorded instruments in a grantee's chain of title. *See Sherman v. Sipper*, 137 Tex. 85, 152 S.W.2d 319, 321 (Tex.1941) (holding in a fraud case

that purchasers had constructive notice of matters reflected in real property records and that limitations barred the claim); *see also "Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 939 (Tex.1972) (holding that a subsequent purchaser of real property had constructive notice of all it would have learned if it had inquired of one who was in actual possession of the property and who claimed a superior interest). The need for stability and certainty regarding titles to real property has led courts to hold that real property records can constitute constructive notice. For the same reasons, courts have imposed constructive notice in connection with in rem proceedings because such proceedings are intended to bind all persons. *See Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex.1981). When the legal device of constructive notice is employed, a person is deemed to have actual knowledge of certain matters. Constructive notice creates an irrebuttable presumption of actual notice. *Id.* Thus, we held in *Mooney* that a person interested in an estate admitted to probate is charged with notice of what the will provides and that a claim for fraud based on exclusion from a will must be brought within the applicable limitations period. *Id.* But, when the rationale for imposing constructive notice is lacking, public records have not been held to create an irrebuttable presumption of notice. *See Andretta v. West*, 415 S.W.2d 638, 642 (Tex.1967) (holding that amendment to oil and gas lease executed and recorded after royalty owner acquired his interest was not constructive notice); *see also Little v. Smith*, 943 S.W.2d 414, 421 (Tex.1997) (refusing to extend concept of constructive notice to claim by adoptee under the will of her biological grandmother because adoptees may not be able to determine the identity of their biological relatives).

■ While some records of the Railroad Commission in certain circumstances may provide constructive notice, the records regarding illegal production by AOP are not of that character in the context of the Neels' claims against HECI. Nevertheless, filings and other materials publicly available from the Railroad Commission are a ready source of information, and a cause of action for failure to provide that same information is not inherently undiscoverable. *See Shivers v. Texaco Exploration & Prod., Inc.*, 965 S.W.2d 727, 735 (Tex.App.—Texarkana 1998, writ denied) (holding that records on file with the Railroad Commission were sufficient to render information discoverable by a royalty owner).[1] As demonstrated in this case, the information that the Railroad Commission maintains regarding fields in which there is competing production indicates that injury to a common reservoir by an adjoining operator is not inherently undiscoverable.

■ The Neels contend that they were entitled to rely on HECI to safeguard their interests and that they should not be expected to be vigilant in protecting their property rights from the actions of adjoining operators. This argument bears on whether a covenant to notify royalty owners should be implied in a mineral lease, but it does not support the contention that a breach of any such covenant is inherently undiscoverable. Implied covenants do not dispense with the need for royalty owners to exercise due diligence in enforcing their contractual rights, express or implied, within the statutory limitations period. Any failure of a lessee to monitor activities of operators in a common reservoir or to notify royalty owners of a cause of action against those operators is not an inherently undiscoverable breach.

■ This distinction becomes clearer when a lessee's implied covenant to protect the leasehold is considered in the context of drainage by an adjoining operator. If AOP had drained the Neels' lease and HECI stood by when a reasonably prudent operator would have taken action, all parties concede that HECI would have violated an express or implied covenant to protect the leasehold. *See generally Amoco Prod.*, 622 S.W.2d at 568. But it does not follow that the cause of action the Neels would have against HECI would be inherently undiscoverable. A royalty owner who makes no inquiry for years

---

1. To the extent that *Shivers* could be read as indicating that all Railroad Commission records are constructive notice (as distinguished from discoverable for discovery rule purposes) simply because they are a matter of public record, *see Shivers*, 965 S.W.2d at 735, we disagree.

on end cannot then sue for breaches of contract that could have been discovered within the limitations period if reasonable diligence had been exercised. *See Harrison v. Bass Enters. Prod. Co.*, 888 S.W.2d 532, 538 (Tex. App.—Corpus Christi 1994, no writ) (holding that a nonparticipating royalty interest owner is a party to a contract and is charged with the duty of protecting its own interests).

The Neels rely on this Court's decision in *Andretta v. West*, 415 S.W.2d 638 (Tex.1967), as authority for applying the discovery rule in this case. *Andretta* is inapposite. We held that a fiduciary relationship exists between an owner of the executive rights and nonparticipating royalty owners in Andretta's position because the former has the power to make and amend the lease and thereby affect the latter's rights. *Id.* at 641; *see also Manges v. Guerra*, 673 S.W.2d 180, 183 (Tex. 1984). Because of that fiduciary duty, an amendment to a lease executed and recorded after Andretta acquired his interest was not constructive notice because there was no occasion for him to search the records when he had no reason to know or suspect that West had agreed to a payment in lieu of royalty. *See Andretta*, 415 S.W.2d at 642. We further held that limitations did not commence running until Andretta learned or should have learned of the wrong. *Id.* That decision is consistent with other Texas decisions in which there was a breach of fiduciary duty. *See Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988) (holding that fiduciary duty justified the discovery rule); *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 394 (Tex.1945) (holding in suit by trust beneficiary against trustee that running of limitations was deferred until the beneficiary knew of the acts of the trustee). Texas law has never recognized a fiduciary relationship between a lessee and royalty owners. *Cf. Harrison*, 888 S.W.2d at 537 (holding that there was no fiduciary or special relationship between an operator and a lessee that would give rise to a duty on the part of the operator to disclose the existence of a cause of action the royalty owner had against it).

Finally, we note that other courts of appeals have held that the discovery rule does not apply in analogous contexts. *See Shiv-*

*ers*, 965 S.W.2d at 735 (holding that failure of lessee to apprize royalty owner of tax laws regarding royalties from tight formation wells was not inherently undiscoverable); *Rogers v. Ricane Enters., Inc.*, 930 S.W.2d 157, 169 (Tex.App.—Amarillo 1996, writ denied) (holding that discovery rule did not apply to claims for conversion of oil and gas); *Koch Oil Co. v. Wilber*, 895 S.W.2d 854, 863 (Tex.App.—Beaumont 1995, writ denied) (holding that discovery rule did not apply to cause of action for failure to pay royalty because available information should have put plaintiff on inquiry); *Harrison*, 888 S.W.2d at 538 (holding that discovery rule did not apply to nonpayment of royalty).

To the extent that the Neels' claims for breach of contract and negligent misrepresentation depend on the existence of an implied covenant that the lessee will notify royalty owners that an adjoining operator has injured the reservoir, they are barred by limitations. We now turn to the court of appeals' holding that a lessee has an implied duty to notify royalty owners that the lessee intends to sue an adjoining operator for damages.

## IV

### A

This Court has not lightly implied covenants in mineral leases. *See, e.g., Freeport Sulphur Co. v. American Sulphur Royalty Co.*, 117 Tex. 439, 6 S.W.2d 1039 (Tex.1928). Our decisions have repeatedly emphasized that courts " 'cannot make contracts for [the] parties.' " *Gulf Prod. Co. v. Kishi*, 129 Tex. 487, 103 S.W.2d 965, 968 (Tex.1937) (quoting *Freeport Sulphur*, 6 S.W.2d at 1041). A covenant will not be implied unless it appears from the express terms of the contract that "it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it," and therefore they omitted to do so, or "it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument." *Danciger Oil & Ref. Co. v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635 (Tex.1941) (citing *Freeport Sulphur*). A court cannot imply a covenant

to achieve what it believes to be a fair contract or to remedy an unwise or improvident contract:

It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument as a whole.

*Danciger*, 154 S.W.2d at 635.

Applying these principles, this Court declined to imply a covenant to develop in a conveyance that reserved an overriding 1/8 interest in the minerals to be delivered to the grantor free of cost when mined. *Id.* at 636. An obligation to develop was not so clearly within the contemplation of the parties that they deemed it unnecessary to express it. The decision in *Danciger* drew a distinction between oil and gas *leases* and *conveyances* with a reservation of mineral interests. The obvious purpose of a mineral lease is for the lessee to conduct exploration and drilling within a defined period of time. *Id.* at 635–36. That is not the case with conveyances of mineral interests.

 We have imposed implied covenants only when they are fundamental to the purposes of a mineral lease and when the lease does not expressly address the subject matter of the covenant sought to be implied. *See, e.g., Gulf Prod. Co.*, 103 S.W.2d at 971 (holding that there was no implied covenant to develop when the leases made provision for the drilling of a particular number of wells). Broadly categorized, we have recognized implied covenants to (1) develop, which means to drill an initial well and to reasonably develop the lease, (2) protect the leasehold, which includes protection from local and field-wide drainage, and (3) manage and administer the lease. *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 567 & n. 1, 568 (Tex.1981) (citing in part HEMINGWAY, THE LAW OF OIL AND GAS § 8.1 (1971)). The more particularized elements of the duty to protect the leasehold from field-wide drainage may include the duty to drill replacement or additional wells, re-work existing wells, seek field-wide regulatory action, seek Rule 37

exceptions from the Railroad Commission or other administrative relief, or seek voluntary unitization. *Id.* at 568. But an operator is not required to take such steps unless there is a reasonable expectation of profit. *Id.* (holding that there is "no duty unless such an amount of oil can be recovered to equal the cost of administrative expenses, drilling or re-working and equipping a protection well, producing and marketing the oil, and [still] yield to the lessee a reasonable expectation of profit"). The extent of each lessee's implied duties is governed by the concept of what a reasonably prudent operator would do "to carry out the purposes of the oil and gas lease." *Id.; see also Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684, 695 (Tex.1959).

 Contractual implications "are justified only on the ground of necessity." *W.T. Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 19 S.W.2d 27, 31 (Tex.1929); *see also Freeport Sulphur*, 6 S.W.2d at 1042 (holding that " '[i]mplied covenants can only be justified upon the ground of legal necessity' ") (quoting *Grass v. Big Creek Dev. Co.*, 75 W.Va. 719, 84 S.E. 750, 756 (W.Va.1915) (Poffenbarger, J., concurring)). "Necessity" does not include reformation of the contract through the use of an implied covenant in order to achieve what a court views as a more balanced agreement.

**B**

The court of appeals found it legally necessary to imply a covenant that the lessee would notify royalty owners if it intended to sue an adjoining owner for damage to the reservoir. The court reasoned that this implied covenant was essential to protect royalty owners' interests because of the danger of collateral estoppel. *See* 942 S.W.2d at 218, 220, 222. "Notification alerts all interestholders of the threat to the leasehold and of the impending action that may bind them whether or not they participate." *Id.* at 218.

 The necessity found by the court of appeals for implying a covenant does not exist. A lessee cannot collaterally estop royalty owners in a suit against an adjoining operator for damages to the reservoir absent an assignment by the royalty owner to the

lessee or an agreement that the lessee will represent the royalty owner. Collateral estoppel binds only the party against whom estoppel is sought or those in privity. *See Benson v. Wanda Petroleum,* 468 S.W.2d 361, 362 (Tex.1971). A lessee and royalty owners are not in privity for purposes of collateral estoppel.[2]

Although the circumstances of each case must be examined, generally, parties are in privity for purposes of collateral estoppel when: (1) they control an action even if they are not parties to it; (2) their interests are represented by a party to the action; or (3) they are successors in interest, deriving their claims through a party to the prior action. *Id.; see also Getty Oil Co. v. Insurance Co. of N. Am.,* 845 S.W.2d 794, 800–01 (Tex.1992); *Benson,* 468 S.W.2d at 363 (discussing privity in the context of res judicata). There is no privity between HECI and the Neels with regard to their claims against AOP because, as the court of appeals correctly recognized, a lessee has no inherent right to sue on behalf of royalty owners. *See* 942 S.W.2d at 217. A royalty interest is an interest in real property that is a distinct part of the mineral estate. *See generally Altman v. Blake,* 712 S.W.2d 117, 118 (Tex. 1986). Although royalty is payable only as minerals are produced, a royalty owner is entitled to compensation for damage to a reservoir underlying an oil and gas lease. *See Elliff v. Texon Drilling Co.,* 146 Tex. 575, 210 S.W.2d 558, 563 (Tex.1948). When a mineral or royalty interest owner is damaged by a violation of the conservation laws of this state or a Railroad Commission rule or order, section 85.321 of the Texas Natural Resources Code also expressly provides for a damage suit against the offending operator.[3] This Court has never had occasion to determine the appropriate measure of damages when a royalty owner sues for damage to the reservoir, *see Elliff,* 210 S.W.2d at 560, but a royalty interest has a reasonable market value that can be adversely affected by the loss of otherwise recoverable reserves that are burdened with royalty obligations. A royalty owner may sue for its own damages without the joinder or permission of the lessee. *See generally id.*

The relationship between HECI and the Neels is among those encompassed in the RESTATEMENT (SECOND) OF JUDGMENTS section 54, which provides that when two or more persons have concurrent ownership interests in property, a judgment for or against one of them is not res judicata against the other. The illustration given in RESTATEMENT section 54 is analogous to the respective rights of lessees and royalty owners and supports our conclusion that they cannot collaterally estop one another:

A is the tenant and B the landlord of premises that are destroyed by C's act. A brings an action against C for losses. Whether judgment is for or against A it does not preclude B from bringing an action for his losses against C. If judgment is for A, issues determined therein are preclusive against C in accordance with § 29.

RESTATEMENT (SECOND) OF JUDGMENTS § 54 cmt. c, illus. 1 (1982).

Requiring a lessee to notify royalty owners that it intends to sue an adjoining operator is unnecessary to give effect to the purpose of the lease as a whole. *See Danciger Oil & Ref. Co. v. Powell,* 137 Tex. 484, 154 S.W.2d 632, 635 (Tex.1941). Such a notice require-

---

**2.** The *elements* of collateral estoppel are that " '(1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.' " *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 721 (Tex.1990) (quoting *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984)).

**3.** The Natural Resources Code provides:
 § 85.321. **Suit for Damages**
 A party who owns an interest in property or production that may be damaged by another party violating the provisions of this chapter

... or another law of this state prohibiting waste or a valid rule or order of the commission may sue for and recover damages and have any other relief to which he may be entitled at law or in equity. Provided, however, that in any action brought under this section or otherwise, alleging waste to have been caused by an act or omission of a lease owner or operator, it shall be a defense that the lease owner or operator was acting as a reasonably prudent operator would act under the same or similar facts and circumstances.
TEX. NAT. RES.CODE § 85.321.

ment would not provide any greater protection to royalty owners than a more limited duty to notify. And it would not protect royalty owners when a lessee settled a matter before suit was contemplated after the offending operator promptly compensated the lessee. A covenant to notify of an intent to sue is not the type of agreement that was so clearly in the parties' contemplation that they thought it unnecessary to express. *Id.* To the extent that the Neels' causes of action for breach of contract and negligent misrepresentation are premised on the existence of an implied covenant that a lessee will notify royalty owners that it intends to file suit, the Neels' claims fail.

## V

■ The third cause of action that the court of appeals remanded for trial was unjust enrichment. In the suit that HECI brought against AOP, the jury found that the difference in value of "HECI's oil and gas reserves in the Alison [sic] 1A well immediately before and immediately after AOP's production in violation of Railroad Commission rules and regulations" was in excess of $1.7 million. The court of appeals reasoned that, because the issue submitted to the jury referred to "HECI's reserves," the "plain meaning" of that term "encompasse[d] all the oil in place, including that on which the royalty interest-holder could base a claim" since "under Texas law HECI owned all of the oil in place." 942 S.W.2d at 220. The court of appeals therefore concluded that a fact issue existed regarding unjust enrichment because the jury could have awarded the entire diminution in value of the reserves to HECI.

The court's analysis of what HECI owned fails to recognize that although HECI did own all of the reserves in place, that interest was burdened with royalty obligations to the Neels. However, we agree that a fact question existed because the summary judgment record does not clearly reflect whether HECI put on evidence during the AOP trial of the diminution in value of only its net working interest and whether HECI sought to recover only that amount. Accordingly, we assume for purposes of analyzing the unjust enrichment claim that HECI recov-

ered for the damage to all interests, not just the damage to its interest. But that does not end our inquiry.

■ Unjust enrichment "is not a proper remedy merely because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss'... or because the benefits to the person sought to be charged amount to a windfall." *Heldenfels Bros. v. City of Corpus Christi,* 832 S.W.2d 39, 42 (Tex.1992) (quoting *Austin v. Duval,* 735 S.W.2d 647, 649 (Tex.App.—Austin 1987, writ denied)). We have recognized that, in some circumstances, a royalty owner has a cause of action against its lessee based on unjust enrichment, but only when the lessee profited *at the royalty owner's expense.* Unjust enrichment was the basis for recovery in *Gavenda v. Strata Energy, Inc.,* 705 S.W.2d 690, 693 (Tex.1986), in which we held that division orders were not binding on a royalty owner when the lessee erroneously prepared them and then retained for itself the royalty that should have been paid. We distinguished the situation in *Gavenda* from the one presented in *Exxon Corp. v. Middleton,* 613 S.W.2d 240 (Tex.1981), in which the lessee had erroneously prepared division orders and had overpaid some and underpaid other royalty owners. *See Gavenda,* 705 S.W.2d at 692–93. In *Middleton,* the underpaid royalty owners could not recover from Exxon based on unjust enrichment because Exxon had not profited at their expense and because they had a cause of action against the overpaid royalty owners for unjust enrichment. *Id.*

The fact that HECI may have recovered more than it was entitled is a matter about which AOP could have complained in the suit against it, but that does not give rise to a cause of action for unjust enrichment in favor of the Neels. HECI and the Neels had independent causes of action against AOP. Notwithstanding any excess recovery by HECI, the Neels would have been entitled to recover from AOP the full amount of damage attributable to their interest had they timely sued AOP. Section 54 of the RESTATEMENT (SECOND) OF JUDGMENTS, considered above, applies here as well. HECI's judgment against AOP did not bind the Neels in any

respect or limit their right to recover against AOP. HECI had no right to sue for damages suffered by the Neels, and the Neels had no right to require HECI to sue on their behalf. Accordingly, the trial court did not err in granting summary judgment in favor of HECI on the unjust enrichment claim.

\* \* \* \* \*

For the foregoing reasons, we reverse the judgment of the court of appeals in part and render judgment that the Neels take nothing.

O'NEILL, J., not sitting.