TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00290-CV






Ford Motor Company, Appellant


v.


Motor Vehicle Board of the Texas Department of Transportation and

Metro Ford Truck Sales, Inc., Appellees






DIRECT APPEAL FROM THE MOTOR VEHICLE BOARD

OF THE TEXAS DEPARTMENT OF TRANSPORTATION




M E M O R A N D U M O P I N I O N



 Ford Motor Company appeals from the order by the Motor Vehicle Board of the
Texas Department of Transportation fining Ford $10,000 for improperly resisting the transfer of the
Ford truck sales franchise assigned to Metro Ford Truck Sales, Inc. We conclude that the Board's
order must be reversed because of the Board's failure to give proper effect to a previous decision in
a related case by this Court. Accordingly, we reverse the Board's order and remand this cause for
further proceedings.

 This cause is part of a long-running dispute between Ford and Metro, a Ford
franchisee. (1) In 1995, Ford attempted to terminate Metro's franchise. Metro protested, prompting
a proceeding before the Board to determine whether Ford had good cause to terminate the franchise
(Metro I). See Tex. Occ. Code Ann. § 2301.453 (West 2004). That protest triggered entry of a
statutory stay that prevented the parties from committing any act or omission that would affect a
legal right, duty, or privilege of any party before the Board. Id. § 2301.803 (West 2004). In 1998,
the Board found that Ford had good cause to terminate the franchise, but imposed conditions
on the termination--including that Ford allow Metro to sell the franchise. The district court
affirmed the good cause finding, reversed the imposition of conditions on the termination
as unlawful, and remanded for further proceedings. This Court affirmed the district court's
judgment. Ford Motor Co. v. Motor Vehicle Bd., 21 S.W.3d 744, 748-54 (Tex. App.--Austin 2000,
pet. denied). The supreme court denied review on April 5, 2001.

 Also in 2001, Metro proposed selling its franchise to the Cox Group. Ford opposed
the sale--in part because of the judicially affirmed finding that Ford had good cause to terminate
the franchise and in part because of alleged deficiencies in both the transfer application and the
Cox Group's qualifications. A motor vehicle manufacturer may not unreasonably prohibit the sale
of a franchise. Tex. Occ. Code Ann. § 2301.359(e) (West 2004); see also id. § 2301.458
(West 2004). The manufacturer must state in writing its reasons for opposing the transfer. Id.
§ 2301.359(d). A dealer whose transfer is rejected may file a protest with the Board. Id. § 2301.360
(West 2004). The manufacturer must then establish that the proposed transferee is not qualified. 
Id. If the Board finds that the proposed transferee is qualified, the transfer is effected by law. 
Id. § 2301.360(c). After Ford rejected the proposed transfer, Metro filed a protest with the Board
on July 20, 2001. That protest is this cause (Metro IV). (2)

 Ford asked the Board to resolve Metro I before considering this cause. When the
Board refused, Ford filed a petition for writ of mandamus with this Court, seeking to stay this
proceeding and thereby compel the Board to give precedence to Metro I. This Court denied
the petition. See In re Ford Motor Co., No. 02-03-00314-CV (Tex. App.--Austin May 31, 2002,
orig. proceeding). After learning that Metro no longer wanted to sell the franchise to the Cox Group,
but instead wanted to sell it to Stanley Graff, Ford sought dismissal of this cause as moot. The Board
declined to dismiss. Ford's opposition to the sale to Graff prompted Metro to file a protest with
the Board. That cause is Metro V and is the subject of a separate proceeding that is decided
by this Court contemporaneously with this opinion. Sterling Truck Corp. v. Motor Vehicle Bd.,
No. 03-05-00288-CV (Tex. App.--Austin May 1, 2008).

 On February 3, 2005, the Board decided all three causes. In its reconsideration of
Metro I, the Board withdrew its good cause determination and concluded instead that Ford did not
have good cause to terminate Metro's franchise. In this cause, Metro IV, the Board adopted the
proposal for decision of the administrative law judge ("ALJ"). The Board concluded that Ford's
requirements for the Cox Group were unreasonable and contrary to applicable statutes. The Board
assessed a $10,000 civil penalty against Ford for violating the statutes by unreasonably opposing the
sale. The Board assessed the fine despite the Cox Group's withdrawal, reasoning that Ford's
statutory violations were complete when Ford wrongly opposed the sale and did not become moot
when the Cox Group decided not to buy the property. Because the Cox Group was "no longer a
viable purchaser," the Board determined that the statutory transfer to the Cox Group was not
required. In Metro V, the Board found that proposed transferee Graff was qualified, fined Ford for
resisting the transfer of the franchise to Graff, and ordered the franchise transferred pursuant to
statute. Ford has appealed all three orders.

 Ford raises several issues in this direct appeal challenging the Board's decision in
Metro IV. Ford argues that the order in this cause violated the statutory stay imposed by the filing
of Metro I. Ford contends that the order is void because Metro never properly invoked the sale
approval process that led to this protest and order. Ford also asserts that this cause was moot when
filed, arguing that the affirmance of the good cause determination rendered a forced sale to the
Cox Group impossible. Ford also contends that the Cox Group's withdrawal of its offer to purchase
the property mooted the controversy and stripped Metro of its standing to pursue this cause to force
a sale to the Cox Group. Ford argues that, in light of the judicially affirmed finding that Ford had
good cause to terminate Metro's franchise and the Cox Group's withdrawal of its offer, Ford
could not approve a transfer of Metro's dealership, Metro did not have the ability to propose a
transfer, and the Board did not have the authority to penalize Ford for failing to allow Metro to
transfer the franchise.

 We review the Board's order under the substantial evidence rule. Tex. Occ.
Code Ann. § 2301.751 (West 2004). Under that standard of review,


 a court may not substitute its judgment for the judgment of the state agency on the
weight of the evidence on questions committed to agency discretion but:


 (1) may affirm the agency decision in whole or in part; and


 (2) shall reverse or remand the case for further proceedings if substantial
rights of the appellant have been prejudiced because the administrative
findings, inferences, conclusions, or decisions are:


 (A) in violation of a constitutional or statutory provision;


 (B) in excess of the agency's statutory authority;


 (C) made through unlawful procedure;


 (D) affected by other error of law;


 (E) not reasonably supported by substantial evidence considering
the reliable and probative evidence in the record as a whole;
or


 (F) arbitrary or capricious or characterized by abuse of discretion
or clearly unwarranted exercise of discretion.


Tex. Gov't Code Ann. § 2001.174 (West 2000).

 Ford argues that the Board's order in Metro IV violated the statutory stay
implemented by the filing of Metro I. The statute creating the stay provides as follows:


 (a) On the initiation of a board proceeding, whether by complaint, protest, or
otherwise, a person who receives notice from the board of a statutory stay
imposed by this chapter may not allow or commit any act or omission that would:


 (1) violate this chapter or any rule, order, or decision of the board;


 (2) affect a legal right, duty, or privilege of any party before the board; or


 (3) tend to render ineffectual a board order in a pending proceeding.


 (b) A statutory stay imposed by this chapter remains in effect until vacated or until
the proceeding is concluded by a final order or decision.


 (c) A person affected by a statutory stay imposed by this chapter may initiate a
proceeding before the board to modify, vacate, or clarify the extent and
application of the statutory stay.


Tex. Occ. Code Ann. § 2301.803. This statute bars various types of actions by "a person who
receives notice from the board of a statutory stay." Id. It does not prevent the Board from taking any
action during the pendency of the stay. The Board is expressly empowered to vacate its own stay. 
Id. In addition, the stay lasts only until final order or decision, and the final order after remand in
Metro I occurred essentially simultaneously with the final order in this cause. Id. We conclude that
the Board's order in this cause did not violate its stay in Metro I.

 We next examine whether Metro gave sufficient notice and information to Ford about
the proposed sale to allow Metro to invoke the Board's jurisdiction to review a protest of Ford's
rejection. The process for approval or disapproval of the transfer of a franchise involves a series of
notices and responses between manufacturer and franchisee. See Tex. Occ. Code Ann. § 2301.359. (3) 
The code provides that "[a] dealer whose application is rejected under Section 2301.359 may file a
protest with the board." Id. § 2301.360(a).

 Ford contends that the Board had no power to hear this cause because Metro's notice
to Ford of the sale was insufficient to start the manufacturer's sale review process that precedes the
Board's review of a protest. Ford complains that someone other than the seller sent the initial letter
informing Ford about the proposed sale, that the initial letter was not certified, that it did not include
required information (such as the proposed buyer's name and address), and that it did not include
a completed application from the proposed transferee or a copy of the final agreement showing that
Metro had decided to transfer the franchise. See id. § 2301.359(b), (c). Ford contends that Metro's
subsequent letter to Ford did not fill in all the gaps left by the Cox Group's earlier letter. Metro's
letter also was not sent by certified mail and included a non-binding letter of intent to sell, which
Ford argues did not notify Ford of a final decision to sell and, therefore, was not the pertinent and
required sales agreement. According to Ford, these deficiencies prevented Metro from invoking the
Board's jurisdiction and rendered the Board's subsequent order void.

 We conclude that the alleged deficiencies in notice and material supplied by Metro
to Ford did not deprive the Board of jurisdiction to hear Metro's protest. The Board's review
process is triggered by a protest filed by a dealer whose proposed sale has been rejected by the
manufacturer under section 2301.359. See Tex. Occ. Code Ann. § 2301.360(a). Regardless of any
inadequacies in materials sent to Ford about the sale, Ford's letter rejecting the proposed sale is a
"statement setting forth the material reasons for the rejection" as described by the occupations code
(although it, too, allegedly was not sent by certified mail as required). See id. § 2301.359(d). 
Metro's protest of that rejection invoked the Board's jurisdiction. See id. § 2301.360(a). 
Inadequacies in a notice of a proposed sale and supporting materials sent to a manufacturer may
make rejection of the sale more reasonable and, thus, may affect the assessment of the merits of a
protest of the rejection, but we are not persuaded that such inadequacies deprive the Board of the
power to consider the protest. The Board's order is not void for want of jurisdiction based on these
reported notice deficiencies.

 Ford also contends that the withdrawal of the Cox Group's offer rendered this entire
proceeding moot. Ford argues that the Board lacked the ability to review Ford's rejection of the sale
because the Board could not mandate the transfer of the franchise. This argument is not supported
by the enabling statutes. The Board has the power to assess a civil penalty for statutory violations. 
Id. § 2301.801. The Board concluded that Ford violated the statute by unreasonably rejecting the
proposed sale of the franchise to a qualified buyer. See id. § 2301.359(e). Whether the Cox Group
was a qualified buyer when Ford rejected the proposed sale was fixed at the time of the rejection. 
Any impropriety in that rejection did not disappear with the withdrawal of the offer. This cause is
not a tort or breach of contract case where harm could be avoided or benefit of the bargain might be
achieved and the damages completely mitigated. This is an assessment of a civil penalty for
violations of statutory duties. The Board retained jurisdiction over the issue of whether Ford violated
the law at the time it rejected Metro's proposed sale of the franchise to the Cox Group.

 Ford contends that this Court's rejection of the forced sale in Metro I makes this
proceeding--reviewing the propriety of Ford's rejection of a proposed sale--an improper collateral
attack on the decision in Metro I. See Ford, 21 S.W.3d at 766. "A collateral attack is an attempt to
avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting,
modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment
currently stands as a bar against." Browning v. Prostok, 165 S.W.3d 336, 346 (Tex. 2005). 
Although Metro may have proposed the Cox Group sale to avert the ultimate practical effect of this
Court's previous decision in Metro I, this proceeding does not attack the binding force of that
judgment. This Court's opinion in Metro I did not terminate Metro's franchise. Rather, it merely
affirmed the Board's decision that Ford had good cause to terminate the franchise. (4) This Court's
determination that the Board lacked the authority to force a sale is limited to the context of a
proceeding to determine whether a manufacturer has good cause to terminate a franchise. See Ford,
21 S.W.3d at 764-66. Unlike the statutes defining the good-cause determination, the statutory
scheme for reviewing protests of rejected sales expressly empowers the Board to require
a manufacturer to permit a sale to a qualified buyer. Compare Tex. Occ. Code Ann. § 2301.453
(good cause), with id. § 2301.360(c) (rejected sale). In Metro I, this Court did not address a parallel,
statutorily authorized protest of a manufacturer's rejection of a proposed sale. The protest of the
rejection of the proposed sale in Metro IV is not a collateral attack on the holdings in Metro I.

 Ford argues that this proceeding is barred by the doctrines of collateral estoppel
and res judicata. Collateral estoppel bars the relitigation of issues resolved in a previous suit if: 
(1) the facts sought to be litigated were fully and fairly litigated in the previous suit, (2) those facts
were essential to the judgment in that suit, and (3) the parties were adversaries in that suit. 
HECI Exploration Co. v. Neel, 982 S.W.2d 881, 890 n.2 (Tex. 1998). The doctrine of res judicata
"prevents a plaintiff from abandoning claims and subsequently asserting them when the claims could
have been litigated in the prior suit. For res judicata to apply, there must be: (1) a prior final
judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity
with them; and (3) a second action based on the same claims that were raised or could have been
raised in the first action." Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430, 449 (Tex. 2007)
(citations omitted). The issues of whether Metro's franchise should be terminated and whether the
Board could force a sale in a good-cause proceeding were litigated in Metro I, but those issues are
not present in this proceeding. The issues central to this proceeding--whether the Cox Group was
qualified to be a franchisee and whether Ford reasonably rejected the proposed sale--were not
litigated in Metro I. We are not persuaded that fact questions and claims relating to the proposed
Cox Group sale should have been brought in a proceeding focused on whether Metro had given Ford
good cause to terminate its franchise. The previous judgment in Metro I that Ford had good cause
to terminate Metro's franchise did not bar Metro from protesting in this cause Ford's rejection of the
proposed sale to the Cox Group under the doctrines of res judicata or collateral estoppel.

 Although our prior judgment in Metro I did not bar this cause, the Board's
misapplication of our holding in Metro I fundamentally undermines its order in this cause. Ford
argued to the Board, as it does in this appeal, that the affirmance of the good cause determination
meant that Metro had no franchise to sell or that permitting a sale was inconsistent with the
occupations code. The ALJ found these arguments "unpersuasive" because they oversimplified
"a very complex set of decisions" and completely ignored the context of the other findings
and conclusions regarding Ford's culpability for events leading to the good cause determination. 
Tex. Motor Veh. Bd., Metro Ford Truck Sales, Inc. v. Ford Motor Co., Docket No. 01-0040 LIC,
at 29-30 (July 16, 2004) (PFD). The ALJ correctly stated that Metro held the franchise even after
the remand and that the good cause finding did "not force Metro to immediately and unconditionally
give up its franchise." Id. at 30. (5) However, the Board went further in its reconsideration of
Metro I, believing that the good cause determination itself was within the scope of the remand. As
we discuss at greater length in our opinion on the concurrent appeal in Metro I, however, the good
cause determination was affirmed and not remanded. See Freightliner Corp. v. Motor Vehicle Bd.,
03-05-00289-CV, slip op. at 19-20 (Tex. App.--Austin May 1, 2008). Thus, the Board assessed a
penalty against Ford in this case while under a key misapprehension regarding the context of Ford's
resistance to the proposed transfer. This error of law in the related case concerning the security of
Metro's hold on its franchise plainly affected the Board's decision in this case.

 We cannot gauge, however, the extent to which the misapprehension regarding the
good cause determination affected the Board's decision in this case. Nor can we discern the extent
to which the Board's mistaken belief that the good cause determination was remanded affected the
determination that Ford improperly rejected the sale and that a fine was appropriate. It is possible
that the Board's order may have been based on the merits of the Cox Group's application irrespective
of the status of Metro's franchise. Indeed, the Board found violations and imposed a fine even
though the Cox Group actually withdrew its offer to purchase and one investor in the prospective
purchasing group was later revealed to be morally unfit. On the other hand, it is more likely that the
Board's assessment of Ford's resistance to the sale would have been different had the Board
understood that the good cause determination in Metro I was not remanded and was not subject to
being revisited by the Board. Supporting this view is the ALJ's remark--part of the proposal for
decision adopted by the Board--on the importance of the context of the complex set of decisions
made concerning the dispute between these parties. Assessing Ford's opposition to the sale in the
proper context, the Director of the Motor Vehicle Division of the Texas Department of
Transportation (6) may well conclude that no violation occurred or that any violations are less serious
and warrant a lesser fine. The Board's error of law and the uncertainty it engenders regarding the
violations found and the fine imposed require that we reverse the Board's order in this cause and
remand for reconsideration and further proceedings.

 Having determined to remand this cause based on the error of law regarding
the determination that Ford had good cause to terminate Metro's franchise, we will not review
Ford's remaining issues on appeal regarding the support for the findings of violations and
the assessment of a fine. Although Ford requests that we reject the Board's holdings supporting
the assessment of the fine and render judgment in Ford's favor, we are not authorized in this type
of case to render a judgment that we believe the agency should have rendered if, by doing so, we
would usurp the agency's authority. See Tex. Gov't Code Ann. § 2001.174; Ford Motor Co.
v. Butnaru, 157 S.W.3d 142, 149 (Tex. App.--Austin 2005, no pet.); Pantera Energy Co.
v. Railroad Comm'n, 150 S.W.3d 466, 474 n.9 (Tex. App.--Austin 2004, no pet.); Public Util.
Comm'n v. GTE-SW, 833 S.W.2d 153, 175 (Tex. App.--Austin 1992), aff'd in part, rev'd in part
on other grounds, 901 S.W.2d 401 (Tex. 1995); Consumers Water, Inc. v. Public Util. Comm'n,
774 S.W.2d 719, 722 (Tex. App.--Austin 1989, no writ); see also Marrs v. Railroad Comm'n,
177 S.W.2d 941, 950 (Tex. 1944). On the record presented, we believe that rendering judgment in
favor of Ford would be an unwarranted intrusion on the Board's authority. Because resolution of
these remaining issues would not alter our disposition of this cause, consideration of them is not
necessary to the final disposition of this appeal. See Tex. R. App. P. 47.1. For the same reason, we
do not address Metro's assertion that Ford waived the right to complain about one of the Board's
findings.

 We reverse the Board's order assessing a fine against Ford in this cause and remand
the cause to the Director of the Motor Vehicle Division of the Texas Department of Transportation
for reconsideration in light of a correct application of this Court's holdings in Metro I and further
proceedings consistent with this opinion.



 

 G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Reversed and Remanded

Filed: May 1, 2008
1. A more detailed history of the dispute between these companies is set out in a previous
opinion by this Court in a related cause. See Ford Motor Co. v. Motor Vehicle Bd., 21 S.W.3d
744, 748-54 (Tex. App.--Austin 2000, pet. denied). Other aspects of the overall dispute are also
set out in separate opinions issued along with this one. See Sterling Truck Corp. v. Motor Vehicle
Bd., No. 03-05-00288-CV (Tex. App.--Austin May 1, 2008) (Metro V); Freightliner Corp. v. Motor
Vehicle Bd., 03-05-00289-CV (Tex. App.--Austin May 1, 2008) (Metro I).
2. The record contains references to other disputes (e.g., Metro II and Metro III) not before
this Court that the parties presented to the Board.
3. The occupations code provides as follows:


 (a) A dealer must notify the manufacturer or distributor of a vehicle the dealer is
franchised to sell of the dealer's decision to assign, sell, or otherwise transfer a
franchise or a controlling interest in the dealership to another person. The notice
is the application by the dealer for approval by the manufacturer or distributor of
the transfer.


 (b) Notice under Subsection (a) must:


 (1) be in writing and include the prospective transferee's name, address, financial
qualifications, and business experience; and


 (2) be sent by certified mail, return receipt requested.


 (c) The notice must be accompanied by:


 (1) a copy of pertinent agreements regarding the proposed assignment, sale, or
transfer;


 (2) completed application forms and related information generally used by the
manufacturer or distributor in reviewing prospective dealers, if the forms are
on file with the board; and


 (3) the prospective transferee's written agreement to comply with the franchise
to the extent that the franchise is not in conflict with this chapter.


 (d) Not later than the 60th day after the date of receipt of a notice and application
under this section, a manufacturer or distributor shall determine whether a
dealer's prospective transferee is qualified and shall send a letter by certified
mail, return receipt requested, informing the dealer of the approval or the
unacceptability of the prospective transferee. If the prospective transferee is not
acceptable, the manufacturer or distributor shall include a statement setting forth
the material reasons for the rejection.


 (e) A manufacturer or distributor may not unreasonably withhold approval of an
application filed under Subsection (a). It is unreasonable for a manufacturer or
distributor to reject a prospective transferee who is of good moral character and
who meets the written, reasonable, and uniformly applied standards or
qualifications, if any, of the manufacturer or distributor relating to the prospective
transferee's business experience and financial qualifications.


 (f) An application filed under this section is approved unless rejected by the
manufacturer or distributor in the manner provided by this section.


Tex. Occ. Code Ann. § 2301.359 (West 2004).
4. In the conclusion of the 2000 opinion in Metro I, this Court wrote, "We affirm the
termination of the Metro franchise for good cause . . . ." Ford, 21 S.W.3d at 767. However, as set
out earlier in that opinion, this Court affirmed the finding of good cause to terminate the franchise,
not an actual termination. See id. at 766 ("there is substantial evidence to support the Board's
finding of good cause to terminate Metro" (emphasis added)). The Board is authorized in transfer
proceedings to review whether a manufacturer has good cause to terminate a franchise, not to
order the termination. See Tex. Occ. Code Ann. §§ 2301.453, .455 (West 2004). The
2000 judgment of this Court merely affirmed decisions by the trial court and the Board which, as
discussed in our contemporaneous opinion in Metro I, affirmed the finding of good cause. 
Freightliner, 03-05-00289-CV, slip op. at 19-20.
5. The legislature did not make termination automatic upon the finding of good cause to
terminate. See Tex. Occ. Code Ann. § 2301.453(g) ("After a hearing, the board shall determine
whether the party seeking the termination or discontinuance has established by a preponderance of
the evidence that there is good cause for the proposed termination or discontinuance."). This
contrasts sharply with the statute governing reviews of protests of rejected sales, which provides for
automatic transfer of the franchise when the Board finds that the rejected prospective transferee is
qualified. See Tex. Occ. Code Ann. § 2301.360(c) (West 2004).
6. The legislature has given the Board's former responsibilities to the Director of the Motor
Vehicle Division of the Texas Department of Transportation. See Tex. Occ. Code Ann.
§ 2301.005(a) (West Supp. 2007).