

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-12-00018-CV
_____


MARVIN LIONEL FRIDDLE, Appellant

V.

FRED FISHER AND RUTH FISHER, Appellees


On Appeal from the 62nd Judicial District Court
Hopkins County, Texas
Trial Court No. CV38978


Before Morriss, C.J., Moseley and Cornelius,* JJ.
Opinion by Justice Moseley


_____

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

OPINION

In Hopkins County, Texas, Marvin Lionel Friddle brought suit against Fred Fisher and wife, Ruth Fisher, and Valence Operating Company, Inc., under a claim that Valence had paid royalties on the production of oil and gas to the Fishers that were rightfully owed to Friddle as the holder of a nonparticipating royalty interest (NPRI) to which the Fisher ownership was subject. Friddle's case against Valence was severed from his case against the Fishers. Friddle and the Fishers filed competing motions for summary judgment. After a hearing, the trial court granted the Fishers' motion and denied Friddle's.

On appeal, Friddle argues that the trial court erred in granting the Fishers' summary judgment, claiming that (1) Friddle's claims for conversion, unjust enrichment/money had and received, constructive trust, and fraud were not addressed in the Fishers' motion for summary judgment, (2) there were disputed issues of material fact, (3) the Fishers owed Friddle a fiduciary duty, (4) Friddle had neither actual nor constructive notice of his claim against the Fishers at a time that his claim would have been barred by limitations, (5) the Fishers had a duty to notify Friddle of the execution of an oil and gas lease with a pooling provision and the institution of production, and (6) the trial court misapplied Texas law concerning the discovery rule.[1]

We reverse the summary judgment and remand the case for further proceedings because the Fishers owe Friddle a fiduciary duty, there are issues of material fact in dispute, and the Fishers' motion did not address Friddle's claim for conversion.

---

[1] The Fishers' motion for summary judgment also argued, and Friddle's appeal attacks the court's ruling regarding, laches, but on appeal, the Fishers concede that they "were not entitled [to] summary judgment on [the] affirmative defense of laches." Because of this concession, we do not address the issue.

2

Factual and Procedural Background

In 1949, Friddle's father, M. L. Friddle, conveyed an 84.7-acre tract in Hopkins County to Barney Martin, reserving a one-fourth NPRI in the oil, gas, and other mineral estate of the tract. Friddle's parents then conveyed this NPRI to Friddle in 1992.

In 1995, Barney Martin and his wife conveyed a further one-fourth NPRI in the 84.7-acre tract to each of Mable Robinson and Helen Warde. The following day, the Martins conveyed the 84.7-acre tract to the Fishers, the deed specifically excepting the one-fourth NPRI reserved by Friddle and the two conveyances of the two one-fourth NPRIs conveyed to Robinson and Warde. According to his pleadings, Friddle eventually acquired the NPRIs held by Robinson and Warde (along with the causes of action which those people would have held against the Fishers and Valence).

In 1998, the Fishers signed an oil and gas lease of the property to Triple Tower Petroleum which contained a pooling provision, this lease eventually being assigned to Valence Operating Company. Neither the Fishers nor either holder of the leasehold estate provided notification of this lease to any of the holders of the NPRIs.

Valence drilled an off-site well and pooled the 84.7-acre tract in the "Ames-Antrim Gas unit," but the unit declaration misstated both the date of the Fishers' lease agreement and the recording data of the lease. Valence obtained no ratifications of the pooling agreement or other agreements from any of the holders of the NPRIs. Friddle's operative pleading alleges that from 1999 through the date of filing the lawsuit, Valence paid the Martins the entire one-eighth

3

royalty called for in the lease agreement, not withholding the three-fourths of that part of the royalty represented by the NPRIs mentioned above.

Friddle brought suit against the Fishers and Valence, but the portion of the suit against Valence was severed from the suit against the Fishers. In Friddle's suit against the Fishers, he alleged that although the Fishers held a fiduciary duty to notify him when a lease containing a pooling clause was executed, they failed to do so. Friddle also claimed that the Fishers converted monies that were rightfully his (the three-fourths of one-eighth royalty paid the Fishers by Valence) and that the Fishers were unjustly enriched by receiving and holding money that should have belonged to him. In order to rebut the claims that his suit was barred by various statutes of limitations, Friddle alleged that the limitations were tolled by the discovery rule. Specifically, Friddle alleged that he first learned of the situation regarding the lease and the inclusion of the tract in a unit during the summer or fall of 2008. He also said that the Fishers had received over $90,000.00 in payments that should have been paid to the holders of the NPRI. He alleged further that the monies paid to the Fishers that were attributable to the portion belonging to the NPRI holders should be declared to be held by the Fishers in constructive trust for the benefit of the NPRI holder (Friddle) and that the Fishers committed fraud by failing to disclose to the holders of the NPRI the existence of the lease with the pooling provision. The Fishers responded by the entry of a general denial, also specifically denying that they held a duty to notify Friddle, asserting further that he had either actual or constructive notice of the lease and pooled unit; they also pled that Friddle's cause of action, if any, was barred by the statute of limitations.

4

Friddle and the Fishers each filed a motion for summary judgment. The trial court denied Friddle's motion and granted the Fishers' motion, specifically denying the Fishers' claim for attorney's fees. Friddle appealed the trial court's judgment, arguing that it erred in granting the Fishers' motion for summary judgment.[2]

Standard of Review

The function of a summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue, but to eliminate patently unmeritorious claims and untenable defenses. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex. 1979); *Gulbenkian v. Penn*, 252 S.W.2d 929, 931 (Tex. 1952); *Rivera v. White*, 234 S.W.3d 802, 805 (Tex. App.—Texarkana 2007, no pet.). When reviewing a traditional summary judgment, we take as true all evidence favorable to Friddle and indulge every reasonable inference and resolve any doubts in his favor. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). We disregard all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Where, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed if any of the theories advanced in the Fishers' motion are meritorious. *See Hyde v. Hoerauf*, 337 S.W.3d 431, 434 (Tex. App.—Texarkana 2011, no pet.) (citing *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)).

---

[2]Friddle does not argue that the trial court erred by failing to grant his motion for summary judgment.

5

In their motion for summary judgment, the Fishers argued that Friddle's claims were barred by the holdings in *Montgomery v. Rittersbacher*, 424 S.W.2d 210 (Tex. 1968), which is discussed below. The Fishers maintain that the only duty they held to Friddle as the holder of the NPRI was to obtain the same royalty for him that they obtained for themselves and, further, that Friddle's suit was barred by limitations. As to each of these theories, we must determine whether Friddle raised any issues of material fact and whether the Fishers were entitled to judgment as a matter of law.

Are Friddle's Claims Barred by *Montgomery v. Rittersbacher*?

The Fishers argued that Friddle's claims are barred by *Montgomery v. Rittersbacher* and similar cases. As part of his sixth point of error, Friddle contends that the trial court erred in granting the summary judgment based upon *Montgomery*.

In *Montgomery*, an NPRI owner sued the lessee and the owner of the executive rights for a share of the royalties that had already accrued and royalties that were to accrue in the future under an oil and gas lease containing a pooling provision which had been included in a unit with the well being drilled off the premises. *Id.* at 215. Because the funds had accrued, but had not yet been paid, the lessee tendered the amount in controversy into the registry of the court. *See Id.* at 212 n.4. The Texas Supreme Court held that by bringing suit and claiming a right to the payment of royalty, the NPRI owner had ratified the lease and was therefore only entitled to receive royalties accruing from and after the date the suit was filed. *Id.* at 215.

*Montgomery* is distinguishable from the present case because the disputed funds in this case have already been paid to the Fishers (who owe Friddle a fiduciary duty) whereas, in

6

*Montgomery* the disputed funds had never been paid out to anyone by the holder of the leasehold estate but, instead, were held by the producer, a third party who was not in a fiduciary relationship with the NPRI holder. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998) (fiduciary duty exists between executive owner and holder of NPRI, but no such relationship exists between NPRI holder and lessee).

## What Duty Did the Fishers Owe Friddle and Do the Facts Conclusively Prove They Satisfied that Duty?

In points of error three and five, Friddle attacks the summary judgment, arguing that the trial court erred as a matter of law regarding what duty the Fishers owed him.

In their motion for summary judgment, the Fishers argued that they fulfilled the only fiduciary duty they owed Friddle, which they allege was solely to acquire for him the same benefit they exacted for themselves—that is, to execute the same type of oil and gas lease on the same terms as they would have done in the absence of the outstanding NPRI held by Friddle. In his response, Friddle argued that the Fishers, as owners of executive rights, had a duty to inform him, as an NPRI owner, when they signed a lease authorizing pooling because it directly affected his rights.

It is settled law in Texas that the owners of executive rights owe a fiduciary duty[3] of "utmost fair dealing" to the owners of other interests in the mineral estate, such as the holder of an NPRI. *Lesley v. Veterans Land Bd. of State*, 352 S.W.3d 479, 480–81 (Tex. 2011) (citing *Schlittler v. Smith*, 101 S.W.2d 543, 545 (Tex. 1937)). The full parameters of this duty have not

---

[3]The Texas Supreme Court has repeatedly characterized the executive's duty of utmost fair dealing as fiduciary in nature. *Lesley*, 352 S.W.3d at 488; *see also HECI Exploration*, 982 S.W.2d 881; *Andretta v. West*, 415 S.W.2d 638 (Tex. 1967).

7

been completely explained, but there are some established guidelines. One aspect of this duty is just as the Fishers claim here—that a person holding the executive rights must acquire for the holder of the nonexecutive right every benefit he exacts for himself—that is, he must execute the same type of oil and gas lease on the same terms as he would have done in the absence of an outstanding, nonparticipating interest. *Manges v. Guerra*, 673 S.W.2d 180, 183–84 (Tex. 1984). However, contrary to the Fishers' argument, this is not the sole duty of the holder of the executive rights. If the holder of the executive right receives royalties pursuant to the rights held by an NPRI holder, he is chargeable in equity as constructive trustee with the duty to hold the royalty attributable to the holder of the NPRI, whatever it may be, subject to the demand of the NPRI owner. *Andretta*, 415 S.W.2d at 641–22.

In *Andretta*, the Wests executed an oil and gas lease for a ten-year primary term which provided for the payment of a one-eighth royalty. *Id.* at 639. Six months after this lease, the Wests conveyed an undivided one-fourth NPRI to Jenkins, who several days later conveyed it to Andretta. *Id.* Although no production was ever realized on the lands in the lease and the lands were not included within a producing unit, the lessee, Superior, had drilled a producing well on the land adjoining the West property. A dispute arose between the Wests and Superior as to whether Superior was obligated to drill an offset well on their property. *Id.* To resolve the dispute, they agreed to a lease amendment wherein Superior agreed to pay the Wests a substitute payment from the other unit which was equivalent to one-eighth of the proceeds from the sale of all oil produced and sold from the well on the adjoining tract. *Id.* Pursuant to the terms of the lease amendment (which was promptly recorded), Superior paid a total of $27,978.16 to the

8

Wests from 1944 to 1957. *Id.* During that time period, no payments were made to Andretta by either Superior or the Wests. *Id.*

A few months after learning of the lease amendment and the existence of the payments by Superior to the Wests, Andretta filed suit, alleging that under his NPRI, he was entitled to one-fourth of the amount paid to the Wests. *Id.* The Texas Supreme Court agreed with Andretta and held that the royalty payments from the other tract in lieu of royalties in the tract in which Andretta held an interest were subjected to the NPRI held by Andretta and "in view of the relationship between the parties to the present case, [the Wests] are accountable to [Andretta] for the latter's one-fourth of the compensatory royalty payments." *Id.* at 641. While the Texas Supreme Court did not go so far as to require the holder of the executive rights to search the title records and determine the name and address of the NPRI owner, the court made clear that if the holder of the executive rights knows the name and whereabouts of the NPRI owner, "it was their duty to notify him of the lease amendment and account to him for his share of the payment as received." [4] *Id.* at 641–42.

The Fishers cite *HECI Exploration* and *Shell Oil Co. v. Ross* in support of their argument that Friddle had a duty to keep tabs on operations in the area to protect his rights under the NPRI. They posit that the owner of a mineral interest is charged with exercising reasonable diligence in

---

[4]In *De Benavides v. Warren*, the court of appeals stated that "[u]tmost fair dealing mandated that [the executive right owners] notify [the NPRI owners] of the execution of leases creating a unitized tract which included their property to allow them to decide whether to ratify or not." 674 S.W.2d 353, 360 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). In *De Benavides*, the plaintiff, the executive owner, had originally granted the nonparticipating royalty interest to the defendants. *Id.* at 355. Though it is not explicitly stated in the opinion, it is likely that the grantor/grantee relationship imputed knowledge of the NPRI owner's name and/or whereabouts, thereby harmonizing the *De Benavides* decision with the Texas Supreme Court's holding in *Andretta*.

protecting his interests and that "[r]oyalty owners cannot be oblivious to the existence of other operators in the area or the existence of a common reservoir." *HECI Exploration*, 982 S.W.2d at 886; *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 925 (Tex. 2011) (owner of reserved mineral interest failed to exercise reasonable diligence when he could have discovered his injury from publicly available information). However, *HECI* and *Shell Oil* (where there was no fiduciary relationship) are distinguishable from this case because the Fishers were in something of a fiduciary relationship with Friddle. The holding of *Lesley* (upon which the Fishers also rely) is similarly inapplicable because rather than suing for royalties paid under a lease—as is the case here—the NPRI owners in *Lesley* sued the holder of the executive rights for failing or refusing to lease the minerals. 352 S.W.3d at 481–83.

We hold that at a minimum, under a duty of utmost good faith, once the Fishers resolved to receive the entire royalty payable under the lease they had signed (including the part attributable to the NPRI), they had a duty to hold the portion of funds which would be payable to the holder of the NPRI as constructive trustees for the use and benefit of the holder of the NPRI. *See Andretta*, 415 S.W.2d at 641–42.

The extent of the duty held by the Fishers to notify the holders of the NPRIs is not quite as clear as the obligation imposed on them concerning royalties paid to them to which they had no entitlement—royalties to which Friddle could have laid claim if he had been aware of the situation. Under *Andretta*, if the executive rights holder knows the NPRI owner's name and whereabouts, the executive owner has a duty to notify the NPRI owner of a lease or other agreement that affects the NPRI owner's rights. *Andretta*, 415 S.W.2d at 641–42. Here, we are

10

unable to determine whether the Fishers had a duty to provide notification to the NPRI holders of the existence of the lease, pooling agreement, and/or unit declaration, because there are unresolved issues of material fact. The unresolved questions of fact here include whether the Fishers were aware of the identity and contact information regarding Friddle or regarding Robinson and Warde, his predecessors in title, as to a part of the NPRI now held by him. *See id*. Therefore, because there are material issues of fact in dispute, summary judgment is not proper. As shown hereinbelow, the alleged breach of fiduciary duty is the basis of Friddle's claims for unjust enrichment, constructive trust, and fraud and, accordingly, we reverse the summary judgment insofar as it relates to those claims.

Do the Facts Conclusively Prove that Friddle's Claims are Barred by the Statute of Limitations?

In their remaining basis for summary judgment, the Fishers argued that Friddle's claims against them are barred by the statute of limitations. In points of error two, four, and six, Friddle contends that the trial court erred in granting summary judgment because the trial court committed errors of law regarding application of the statutes of limitations, the discovery rule, and notice and that there are disputed issues of material fact regarding the same.

There are different applicable statutes of limitations that apply to the claims raised by Friddle. Actions for conversion and unjust enrichment/money had and received each has a two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (West Supp. 2012). Claims for breach of fiduciary duty and fraud are governed by the four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4)–(5) (West 2002). Because Friddle's claim for the imposition of a constructive trust over certain of the funds received by the

11

Fishers is merely a request for a remedy based upon his allegations that the "Fishers[] owed a fiduciary duty . . . that they breached . . . ," the limitations period is the same as that of breach of fiduciary duty. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5).

"A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). Thus, in order to prevail, the Fishers must (1) conclusively prove that the cause of action accrued before the commencement of the statute of limitations period, and (2) negate the discovery rule, if it applies, by proving as a matter of law that there is no genuine issue of material fact about when Friddle discovered, or in the exercise of reasonable diligence should have discovered the nature of his injury. *Id*. If the movant establishes that the statute of limitations bars the action, the respondent must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id*.

Generally, when a cause of action accrues is a question of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). "[A] cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Id*. "In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id*. However, two exceptions may defer accrual of a claim—the discovery rule and the doctrine of fraudulent concealment.

The discovery rule has been applied in limited categories of cases to defer accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of

12

the facts giving rise to a cause of action. *Computer Assocs. Int'l*, *Inc. v. Altai*, *Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). Because Friddle asserted the discovery rule, the resolution of this issue depends upon whether the discovery rule applies and when Friddle discovered, or in the exercise of reasonable diligence, should have discovered his injury.

The Fishers contend that the discovery rule does not apply because Friddle failed to diligently look after his interests and was negligent and inattentive to his affairs.[5] However, it is well-settled law that the discovery rule applies to claims for breach of fiduciary duty. *HECI Exploration*, 982 S.W.2d at 888; *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988); *Andretta*, 415 S.W.2d at 642. In explaining why the discovery rule applies to breach of fiduciary duty, the Texas Supreme Court noted that "a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." *S.V.*, 933 S.W.2d at 8. Thus, "a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct, so long as the relationship exists." *Id.*; *see also West v. Proctor*, 353 S.W.3d 558, 566–67 (Tex. App.—Amarillo 2011, pet. denied). However, once "the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship." *S.V.*, 933 S.W.2d at 8.

Friddle contends that he first became aware of these matters in 2008 and that the statute of limitations began to run at that time. The Fishers argued that Friddle had constructive notice

---

[5]In support of this argument, the Fishers cite *HECI Exploration* and *BP America Production Co. v. Marshall*, where the court held that the discovery rule did not apply. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65–66 (Tex. 2011); *HECI Exploration*, 982 S.W.2d at 886. The NPRI holder in *HECI* and *BP America* had a duty to exercise reasonable diligence because he was not in a fiduciary relationship with the lessee, whereas the parties here are in such a relationship, thereby relieving Friddle of the duty to diligently inquire into the Fishers' conduct. *See S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996).

of these matters in 1999 when the unit declaration was filed in the records of Hopkins County, Texas. Although Friddle attached an uncertified copy of the unit declaration to his response to the Fishers' motion for summary judgment, it does not reflect the date it was placed of record and there is nothing in the record to establish that date. Consequently, that key evidence of constructive notice is lacking. However, even if the record contained a properly dated and authenticated copy of the declaration or lease, it would not charge Friddle with constructive notice because it was executed and recorded after he acquired his initial royalty interest. *Andretta*, 415 S.W.2d at 642 (holding amendment to oil and gas lease executed and recorded after royalty owner acquired his interest not constructive notice). In addition, Friddle claims that the unit declaration is flawed because it incorrectly identifies the recording date and the proper volume and page reference of the lease given by the Fishers.

The Fishers also contend that Friddle had actual notice in 1999 because: (1) the well site has a sign reading "Valence Operating Company Ames-Antrim Lease"; (2) the producing well "has been clearly visible since it was drilled and completed in 1999"; and (3) "the well on the unit that included the Tract [at issue] was obvious." Despite that contention, the Fishers' motion for summary judgment failed to include any competent evidence that the well is "clearly visible" or "obvious." A copy of what appears to be the unit's plat is attached to Friddle's reply, as are maps of the area, a photograph of a sign on the "Ames-Antrim lease," and an affidavit. The photograph, the plat, and the maps are uncertified and otherwise unverified. Friddle's affidavit stated, in relevant part:

14

The well on the Ames-Antrim Unit is not visible from the Tract [at issue]. The Ames-Antrim Unit well was not obvious because it lies behind dense foliage down an unmarked private road almost 1.5 miles from the Tract by the shortest possible public route. It also includes misleading signage indicating that the Ames-Antrim Unit is 95.24 Acres instead of the actual 703.992 acres pooled.

Whether the well (particularly considering that it was not situated on the property the subject of the lease) is visible or so obvious as to provide actual notice is a factual dispute that must be resolved by the trier of fact. Therefore, we reverse the trial court's summary judgment insofar as it is based upon the statute of limitations, the discovery rule, and/or notice.

Did the Fishers' Motion for Summary Judgment Address Friddle's Claims of Conversion, Unjust Enrichment, Constructive Trust, and Fraud?

In point of error number one, Friddle contends that the trial court erred in granting summary judgment because, while the motion addresses his claim for breach of fiduciary duty, it failed to address his claims for conversion, unjust enrichment, constructive trust, and fraud.

A summary judgment movant must expressly state in the motion the grounds upon which he relies. TEX. R. CIV. P. 166a(c). A trial court errs by granting summary judgment on a claim not addressed in the motion. *Jacobs v. Satterwhite*, 65 S.W.3d 653, 655 (Tex. 2001); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990); *PAS, Inc. v. Engel*, 350 S.W.3d 602, 609 (Tex. App.—Houston [14th Dist.] 2011, no pet.). To establish the absence of any genuine issue of material fact concerning one or more of the essential elements of a plaintiff's cause of action, the defendant must identify or address the cause of action and its elements in the motion for summary judgment. *See Black*, 797 S.W.2d at 27.

15

Regarding his claim for unjust enrichment, Friddle argues that the claim is not barred by limitations due to the discovery rule and that "injuries suffered by a breach of fiduciary duty are presumed to be inherently undiscoverable . . . ."[6] This clearly implies that the unjust enrichment claim is based upon a breach of fiduciary duty.

The petition also makes clear that the constructive trust and fraud causes of action are based upon a breach of fiduciary duty. The constructive trust portion of the petition states, in relevant part:

> The Fishers owed a *fiduciary duty* to the NPRI owners that they breached by failure to make required disclosures to them. By way of this *breach*, they obtained over $90,000 in payments meant for the NPRI Owners. It is unconscionable and a *breach of the confidential and fiduciary relationship* between the plaintiff and the defendant for the defendant to retain the $90,000, and the Court should impose a constructive trust upon those monies.

(Emphasis added.) The fraud claim was based upon the Fishers' alleged "duty to disclose" the existence of the lease and the pooling agreement. The only duty to disclose raised in the petition rests upon an alleged breach of a fiduciary duty.

As shown hereinabove, the claims for unjust enrichment, constructive trust, and fraud are based upon a fiduciary duty. Friddle admits that the motion for summary judgment "attacked the fiduciary duty claim." Therefore, these three claims were addressed in Fishers' motion for summary judgment and we overrule this point of error insofar as it relates to them. While the motion's prayer generally asserts that the Fishers are entitled to a summary judgment holding

---

[6]The motion further addresses the unjust enrichment claim in a quote from *Grinnell v. Munson*, noting that "[a]n element of unjust enrichment or self-dealing is common" to these cases. 137 S.W.3d 706, 719 (Tex. App.— San Antonio 2004, no pet.).

that Friddle take nothing, the motion fails to address Friddle's claim of conversion.  Therefore, summary judgment was improper as it relates to the conversion claim.

Accordingly, we reverse the trial court's granting of the Fishers' motion for summary judgment and remand to the trial court for proceedings consistent with this opinion.

Bailey C. Moseley
Justice

Date Submitted:      July 6, 2012
Date Decided:        August 17, 2012

17