

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00056-CV
_____


THE ESTATE OF TAYLOR H. JOBE, DECEASED, Appellant

V.

JOHN F. BERRY AND JOHN F. BERRY, P.C., Appellees


On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 2012-910-B


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

O P I N I O N

Taylor H. Jobe died March 20, 2008. His will named his children, Everette Dean Jobe and Laura Jobe Kelly, co-executors of his estate. To assist them in their role, Dean and Kelly retained attorney, John F. Berry, and his firm, John F. Berry, P.C.[1] According to pleadings filed on behalf of the Estate of Taylor H. Jobe (the Estate) in this lawsuit, Berry was to represent Dean and Kelly "in their capacities as the Independent Co-Executors of the Estate, and to give them legal counsel regarding how to carry out their duties . . . ."

Berry advised Dean and Kelly that they were required to file, by December 20, 2008,[2] a United States Estate (and Generation-Skipping Transfer) Tax Return (IRS Form 706) with the Internal Revenue Service (IRS) because the Estate's gross value exceeded $2,000,000.00. Berry encouraged Dean and Kelly to hire a certified public accountant (CPA) to prepare the Form 706. After the deadline to file the Form 706 had passed, Berry (1) reminded Dean and Kelly of their obligation, as co-executors of the Estate, to file the Estate's tax return, (2) informed them that the deadline for filing the return had passed, and (3) offered to refer them to a CPA. The record demonstrates that Dean, previously a CPA and currently an attorney employed by the Texas Department of Banking (TDB), and Kelly waited until January 18, 2011, to file the Form 706.

As a result of the late filing, the IRS assessed penalties and interest against the Estate. On May 1, 2012, Dean and Kelly sued Berry on behalf of the Estate for legal malpractice allegedly arising out of the late filing of the Form 706. Berry asserted the statute of limitations

---

[1]As used in this opinion, the term "Berry" refers collectively to John F. Berry the individual and to his law firm, John F. Berry, P.C., unless specifically stated otherwise.

[2]*See* I.R.C. § 6075 (West, Westlaw current through Jan. 16, 2014).

as an affirmative defense and filed a motion for summary judgment based on that defense. The trial court agreed with Berry that the Estate's malpractice claims were time-barred and granted summary judgment in Berry's favor.

On appeal, Dean and Kelly contend that the discovery rule and the *Hughes*[3] rule tolled the statute of limitations applicable to the Estate's malpractice claims against Berry and that, as a result, the trial court erred in entering summary judgment for Berry. We conclude that the discovery rule was invoked by the facts of this case. However, because we find that (1) Dean and Kelly knew the deadline for filing the Form 706, (2) Berry informed Dean and Kelly that the Form 706 was late, and, (3) at least as of April 24, 2009, Dean and Kelly knew or should have known, given Dean's professional experience, that the Estate was subject to IRS-assessed penalties and interest as a result of the late-filed return, we further conclude that proper application of the discovery rule to the facts of the case does not save the Estate's claims from the time-bar of the applicable statute of limitations. Finally, we conclude that the tolling principles articulated in *Hughes* relating specifically to legal malpractice claims are inapplicable to the Estate's claims. As a result, we affirm the trial court's judgment.

## I. Factual Background

Dean and Kelly believed Berry was involved in the preparation of the Form 706 and remained responsible for advising them about whether estate taxes were owed and when they would be due. Dean and Kelly sued Berry for legal malpractice on behalf of the Estate, alleging

---

[3]*Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 155 (Tex. 1991) (holding that when attorney commits malpractice in prosecution or defense of claim that results in litigation, statute of limitations on malpractice claim is tolled until all appeals on underlying claim are exhausted).

3

that (1) Berry incorrectly advised them that the Estate would have no tax liability, (2) Berry failed to ensure that the Form 706 was timely filed, and (3) Berry concealed his malpractice in the handling of the Estate's tax return.

## A. Timeline of Events

The timeline of events, as established by the summary judgment proof, is critical to an understanding of the claims and arguments raised in this case.

### 1. Events Occurring Before the December 28, 2008, Deadline

On March 24, 2008, four days after Jobe's death, Dean e-mailed Berry with the intention of securing Berry's legal representation. Dean made the following statements in that e-mail:

- "[Kelly] and I want you to represent us in our capacity as co-executors of the estate."

- "Assuming you agree [to the representation], we intend to use the accounting firm [Jobe] used to assist us with tax returns, the inventory, the forensic effort to identify separate and community property, etc. I believe the firm has information on all aspects of [Jobe]'s estate. . . . At present we believe the firm is trustworthy . . . ."

- "My spouse, Lee Anderson, is a very competent CPA and will be looking over our shoulders to confirm that the accounting advice and product we receive appear normal. Are there any other professionals you believe we should retain for specific tasks?"

- "I spoke with the accountant, Jim Forbis, this morning and will be sending him my contact info. He has already met and spoken with [Kelly.]"

- "[Forbis] mentioned that [Jobe] and [Jobe's ex-wife] Rose owe a LOT in taxes from last year. I believe there are funds already set aside for this purpose, although [Kelly] will know more about this."

Berry agreed to represent Dean and Kelly in their capacity as co-executors of the Estate.

4

On April 15, 2008, Jobe's will (the Will) was admitted to probate. The Will (1) left Jobe's home and personal property to his ex-wife, Rose, (2) placed $2,000,000.00 in the Rose Jobe Family Trust, (3) established three separate lifetime trusts, one for each of Jobe's children, Dean, Kelly, and Margaret, and (4) divided the residue of the Estate in three equal parts and placed one part in each of those lifetime trusts. Dean and Kelly advanced funds to Rose in exchange for a disclaimer of interest that Rose was to prepare.

On May 8, 2008, Berry's firm sent a letter to Dean and Kelly advising that the Estate would likely owe taxes "[s]ince the estate is likely to exceed the available Estate Tax Exemption." The letter identified the steps that had to be taken before the Estate's assets and claims could be properly inventoried and reminded Dean and Kelly that the return, "unless extended, is due on December 20, 2008." Berry advised Dean and Kelly to seek the advice of a CPA regarding the tax return and offered to recommend a CPA for that purpose.[4]

On December 18, 2008, two days before the Form 706 deadline, Dean e-mailed Berry, writing, "Whether we can trace all the recent proceeds is a separate question of proof. Obviously we need to get the accountant involved. He will need to get started on tax returns soon, and we should pay him to help us document and trace."

The December 20, 2008, deadline for filing the Form 706 passed. Neither the tax return nor a request for an extension of the filing deadline was filed.

---

[4]The stock market crashed in September 2008, impacting the value of assets used to fund the trusts created under the Will.

**2.     Events Occurring After the December 28, 2008, Deadline**

On April 2, 2009, Berry filed a probate inventory in County Court at Law No. 2 of Gregg County showing that the value of the Estate exceeded $2,700,000.00.  Again, this confirmed that a Form 706 was due.

On April 24, 2009, Berry wrote an e-mail that is especially important in determining if summary judgment was proper.  The e-mail addressed to Dean and Kelly warned, "We need to file the estate tax return, and I would recommend that we use an accountant to do so.  Forbis doesn't do that type of work. . . . We should do this as soon as possible as we are already late, and part of the problem was Rose's delay in filing the disclaimer."  On May 15, 2009, Berry sent another e-mail to Dean and Kelly asking, "Do we have an accountant lined up to do the estate tax return?"  Dean replied, stating that he would soon "confirm on CPA choice or offer someone else . . . ."

On May 26, 2009, Dean informed Berry via e-mail that he was inclined to use Forbis to handle the Estate's tax return.  In a separate e-mail sent on that day, Dean stated that Forbis "is agreeable to handling tax returns for the estate.  Although I'm certain he doesn't have the expertise of your neighbor, in my view the estate is not large enough to require seeking out top-notch expertise. . . . At your convenience we need to sends [sic] him the information he will need."

On June 19, 2009, Berry acknowledged Forbis' retention in a letter to him.  The letter (1) stated, "I understand that you are going to prepare the estate tax return, and I am pleased to hear this"; (2) communicated Berry's willingness to coordinate the funding of a family trust with

6

Forbis and "assist [Forbis] in the preparation of the estate tax return so that [they could] wind everything up"; and (3) enclosed a copy of the Will and codicil, along with the Estate's inventory, appraisement, and list of claims.

Almost three months passed without activity.

On September 9, 2009, Berry informed Dean via e-mail that he had received a draft copy of the Form 706 from Forbis, but stated that he needed additional time to review it because he did not agree with the numbers shown and wanted to make sure the return followed the Will and codicil.

On October 12, 2009, Berry reported to Dean:

> The estate tax return drafted by Jim Forbis, does not really follow the will and codicil, nor does it include the annuities paid directly to Rose, so I will send him the additional information. I will recommend that we take losses in the estate for reductions in the values of the assets, and I am not expecting any estate tax, or certainly not much to be due, given the losses. The gross estate was slightly over the tax exempt amount, taking off the items that were paid or distributed directly to Rose. The expenses and losses should take care of the rest.[5]

On August 6, 2010, Berry sent Forbis a letter pointing out the changes that needed to be made to the Form 706 to reflect Berry's interpretation of the Will and codicil and warned, "I am trying to wrap up the Jobe Estate and understand that we need to get the estate tax return completed." The letter included the following:

- "I also believe it would be advantageous to amend the inventory."

- "There is one error that I see regarding the valuation of community property, where one-half of the total was not deducted. There is another change that could be made to reduce, if not eliminate the estate tax that would be due."

---

[5]Berry was referring to losses "[d]ue to the significant reduction in the stock market after death and prior to funding the trust . . . ."

- "Your earlier draft of the return did not seem to construe the codicil as I construe it. The will leaves the residence and personal property to Rose, creates the bypass trust in the amount of $2,000,000, and the residue goes to the children, in trust if not subject to generation skipping tax, and outright if putting it in trust would subject it to generation skipping tax."

- Disclosure of the fact that Dean and Kelly "advanced funds to Rose" and Berry's opinion that the amount advanced can also "be deducted by the estate so as to reduce the potential estate tax."

- "The income tax ramifications of the decisions made on the estate tax return (and vice versa) will need to be reviewed by us so as to reduce the total amount of tax payable."

- A statement of Berry's belief that losses to Estate assets resulting from the stock market crash could have reduced the Estate to "less than $2,000,000.00" and his opinion that a valuation date after death "would likely remove any potential estate tax."[6]

- "I have not spoken with [Kelly] and [Dean] about any of these suggestions."

- A notation below the signature line indicating that Dean and Kelly were sent carbon copies of the letter.

Sometime in August 2010, Dean and Kelly terminated their attorney-client relationship with Berry and hired attorney Steve Saunders to replace him. The Form 706 was completed and signed on January 18, 2011, and was subsequently filed with the IRS. On April 4, 2011, the IRS notified Dean and Kelly that the Estate owed $58,550.00 in penalties and interest due to the late filing of the Form 706. The Estate paid that sum to the IRS. On May 1, 2012, Dean and Kelly sued Berry on behalf of the Estate for legal malpractice.

---

[6]The duty to file a tax return does not establish that any tax is owed. While the duty to file a Form 706 is determined by the size of the decedent's gross estate, plus adjusted taxable gifts and specific exemption, the liability to pay an estate tax is determined after applicable deductions and tax credits. *See generally* IRS Form 706, *available at* http://www.irs.gov/pub/irs-pdf/f706.pdf; and Instructions for Form 706 (Rev. Aug. 2013), *available at* http://www.irs.gov/pub/irs-pdf/i706.pdf; I.R.C. §§ 2001–2801 (West, Westlaw current through Jan. 16, 2014).

### B. The Lawsuit's Procedural History and Arguments of the Parties

In the Estate's petition, Dean and Kelly alleged that

> Berry's May 8, 2008 letter left open the potential for Berry to remain involved in the preparation of the estate tax return, by using the CPA as a consultant or otherwise. Over the course of his representation of the Estate Executors, Berry took actions by which he maintained responsibility for the filing of the estate tax return, and used the opinions of the CPA as a resource only.

The petition acknowledged the two-year statute of limitations for malpractice claims, but argued that the limitations period was tolled through application of the discovery rule. Dean and Kelly claimed,

> It was not until the Estate Executors ceased using Berry as their attorney that they discovered that estate taxes were due for the Estate and that penalties and interest would be incurred by the Estate because the estate taxes were not paid on time.
>
> . . . . The Estate Executors were not notified of the penalties and interest incurred by the Estate for the late filing until their receipt of the April 4, 2011 letter from the IRS. That is when the cause of action was discovered and when the two year limitations period on the Estate Executors' claim against Berry began to run. It would not have been reasonable for the Estate Executors to discover their cause of action before that time.

Berry answered the suit raising several defenses, including limitations.[7] Berry moved for summary judgment on the ground that the Estate's malpractice claim against him was time-barred. He attached many of the letters and e-mails referenced above, claimed that Dean and Kelly delayed hiring an accountant, and argued that they had actual knowledge that the tax returns were not timely filed for over three years prior to the filing of suit.

Specifically, Berry argued that the evidence proved that Dean and Kelly knew or should have known that the Form 706 was late and that penalties and interest could be owed when Berry

---

[7]Berry also claimed that he was never retained to prepare and file the Form 706.

9

reminded them on April 24, 2009, that the Form 706 was past due. As additional support for his motion for summary judgment, Berry introduced evidence demonstrating that he was not dealing with unsophisticated parties. The summary judgment evidence established that, at all times relevant to this matter, Dean was a licensed attorney eligible to practice law in Texas, that he was then employed by the TDB, and that he had been a registered CPA from 1985 until 1998. Berry argued that Dean possessed more than just a cursory knowledge of the issues related to the Estate's tax liabilities and the filing of the Estate's tax return.

Dean and Kelly argued that the statute of limitations did not begin to run "until April 4, 2011, the date that the Estate received notification from the IRS that penalties and interest were owed." In support of their claim that Berry actively participated in the estate tax return process and in the retention of a CPA to prepare the Form 706, Dean and Kelly filed documents, already discussed above, demonstrating Berry's involvement in these matters after the deadline to file the Form 706 had already passed.

Additionally, Dean filed an affidavit claiming that he and Kelly "relied on John Berry as our attorney to handle the estate taxes for the Estate in a competent matter." In the affidavit, Dean swore that Berry failed to "indicate that the Estate would be responsible for paying estate tax penalties and interest," that Berry did not "make [him] aware that there was a nine month deadline for the filing of the estate tax return,"[8] and that Dean, despite his educational and professional backgrounds, "was not aware that such a deadline existed." The affidavit stated,

---

[8]This statement in the affidavit is belied by Berry's May 8, 2008, e-mail sent to Dean and Kelly specifically advising them of the December 20, 2008, deadline.

When I would communicate with John Berry regarding the status of the estate tax return, John Berry would give me the impression the estate tax situation for the Estate was being properly handled. The responses from John Berry, which were in writing (most commonly by email) and sometimes verbally, were to the effect that there were no concerns about the estate tax situation.

Addressing the April 24, 2009, email, Dean's affidavit continued,

When John Berry mentioned in passing in an April 24, 2009 email that the estate tax return was late, there was no indication on John Berry's part that a mistake had been made or that there would be penalties and interest assessed against the Estate by the IRS. . . . I continued to rely on his advice and his expertise and did not discover that any penalties and interest would be assessed against the Estate until after John Berry's representation of [Kelly] and me ended.

Kelly filed an affidavit containing similar statements.

In addressing the argument that he was a sophisticated party, Dean swore, "From my education as an attorney and as a CPA, I know that the laws applicable to estate taxes and estate tax returns change on a regular basis. I do not stay current on those laws as either an attorney or an inactive CPA." Importantly, Dean did not comment on whether he was aware that filing a late tax return could result in penalties or interest.[9]

Dean and Kelly also attached the affidavit of Steve Saunders, the attorney hired to represent them after Berry was terminated. Saunders' affidavit stated,

It was clear to me from the statements made to me by John Berry and from my review of John Berry's work during his time as the attorney for the Executors that John Berry assumed significant involvement and responsibility for the filing of the estate tax return for the Jobe Estate. I[t] was also clear to me from John Berry's statements and from his work that John Berry felt that the estate tax return deadline for the Estate could be disregarded without IRS penalties and interest being assessed against the Estate, since his opinion was that adjustments could be made to the Estate values and\or the estate tax return that would eliminate all

---

[9]Berry argued that even a layperson would know that a late-filed IRS document could subject them to penalties or interest. Our opinion need not address this contention.

estate tax liability for the Estate. One of the methods for reducing or eliminating the estate tax mentioned by John Berry in his emails to the Executors was waiving claims of the estate (which is not permissible).

The trial court granted Berry's motion for summary judgment and dismissed the Estate's claims.[10] We now examine the propriety of the court's decision.

## II.     The Trial Court's Summary Judgment Was Proper

"'[T]he question when a cause of action accrues is a judicial one, and to determine it in any particular case is to establish a general rule of law for a class of cases, which rule must be founded on reason and justice . . . .'" *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988) (quoting *Fernandi v. Strully*, 173 A.2d 277, 285 (N.J. 1961)).

### A.     Standard of Review

Legal malpractice claims are subject to a two-year statute of limitations. *See Isaacs v. Schleier*, 356 S.W.3d 548, 557 (Tex. App.—Texarkana 2011, pet. denied); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2012). "'A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense.'" *Friddle v. Fisher*, 378 S.W.3d 475, 483 (Tex. App.—Texarkana 2012, pet. denied) (quoting *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)).

Here, Berry was required to "(1) conclusively prove that the cause of action accrued before the commencement of the statute of limitations period,"[11] and "(2) negate the discovery

---

[10]The trial court's judgment recited that the motion for summary judgment was heard. This Court was not provided with a transcript of that hearing.

[11]Here, Berry had to prove that the cause of action accrued prior to May 1, 2010.

rule, if it applied, by proving as a matter of law that there [was] no genuine issue of material fact about when [Dean and Kelly] discovered, or in the exercise of reasonable diligence should have discovered the nature of [their] injury." *Id.* If Berry did not conclusively prove these matters, then "'a fact question exists about when the limitations period began to accrue.'" *Isaacs*, 356 S.W.3d at 562 (quoting *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex. App.—Dallas 1995, writ denied). However, if Berry established that the statute of limitations barred the action, it was left to Dean and Kelly to "then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations." *Friddle*, 378 S.W.3d at 483.

In reviewing the trial court's entry of a traditional summary judgment for Berry, we take as true all evidence favorable to Dean and Kelly, indulge every reasonable inference and resolve any doubts in their favor, and disregard all contrary evidence and inferences. *Id.* at 479 (citing *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

## B.      The Discovery Rule Applied to Claims of Legal Malpractice

Generally, when a cause of action accrues is a question of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). "[A] cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Id*. "In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id*. Suit must generally be filed within the limitations period.

13

However, as an exception to this general rule, "Texas applies the discovery rule to legal malpractice claims . . . ." *Isaacs*, 356 S.W.3d at 560.

"The discovery rule has generally been applied in two types of situations: 1) in cases where the nature of the injury incurred is inherently undiscoverable and the evidence of the injury is objectively verifiable; and 2) in cases of fraud and fraudulent concealment."[12] *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 619 (Tex. App.—Texarkana 2002, pet. denied) (citing *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997)). "To be 'inherently undiscoverable,' an injury need not be absolutely impossible to discover, nor does it mean a particular plaintiff did not discover his or her injury within the prescribed period of limitations." *Id.* "It is not dependent solely on the nature of the injury, but on the circumstances in which it occurred and the diligence of the plaintiff." *Id.* "'An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence.'" *Id.* (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996)).

The discovery rule applies to legal malpractice cases because "'it is unrealistic to expect a layman client to have sufficient legal acumen to perceive an injury at the time of the negligent act or omission of his attorney.'" *Willis*, 760 S.W.2d at 645 (quoting Ward, *Legal Malpractice*

---

[12]For the first time on appeal, Dean and Kelly argue that the trial court erred in granting summary judgment because Berry fraudulently concealed the malpractice. However, the question of tolling based on fraudulent concealment was not presented to the trial court. "To preserve an argument against the granting of a motion for summary judgment for appellate review, the non-movant must expressly present that argument to the trial court within its written response to the motion." *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc.*, 401 S.W.3d 95, 98 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)). We decline to address Dean and Kelly's unpreserved argument. In any event, "the estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action" even when the defendant is accused of fraudulent concealment. *See Trousdale v. Henry*, 261 S.W.3d 221, 234 (Tex. App—Houston [14th Dist.] 2008, pet. denied)).

*in Texas*, 19 S.Tex. L.J. 587, 613 (1978)).  Similarly, "it is most unlikely that a client would know that tax advice was faulty at the time he received it."[13]  *Murphy*, 964 S.W.2d at 271.

In deciding whether to apply the discovery rule to legal malpractice cases for the first time, the Texas Supreme Court concluded, "In sum, we believe that any burden placed upon an attorney by application of the discovery rule is less onerous than the injustice of denying relief to unknowing victims."  *Willis*, 760 S.W.2d at 646.  Berry argues that Dean, who was a CPA and is an attorney, is not an unknowing victim.  Thus, Berry argues that the reason for applying the discovery rule to malpractice cases is inapplicable here.

However, whether an injury is inherently undiscoverable is a question decided on a categorical, rather than a fact-specific basis.  *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001); *Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 543 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 187 (Tex. App.—Texarkana 2011, no pet.).  The issue at this stage is not whether "a particular injury was actually discovered in any particular case, but rather whether that case is the type to which the discovery rule applies, based on whether the policy reasons behind the rule are served by applying the rule in that type of case."  *Apex Towing*, 41 S.W.3d at 122.

Berry's argument regarding Dean's experience helps resolve the question of whether Berry negated the discovery rule, not whether the discovery rule applied to the Estate's legal malpractice claims.  Because faulty or omitted tax advice is inherently undiscoverable to a person relying on another to provide sound tax advice, we find that the discovery rule applies to

---

[13]In this case, the Estate's main claim does not arise out of tax advice given, but out of an alleged omission.

15

actionable claims of legal malpractice arising from the provision or omission of tax advice. *See Murphy*, 964 S.W.2d at 271.

### C.     Berry Negated the Discovery Rule in this Case

Because the discovery rule applied to the Estate's claims, Berry was required to conclusively establish that "the nature of the injury [wa]s discovered or should have been discovered in the exercise of reasonable care and diligence" before May 1, 2010. *Isaacs*, 356 S.W.3d at 560 (citing *Willis*, 760 S.W.2d at 647). Berry argues that the discovery rule should not apply because (1) the evidence established that Dean knew of the December 20, 2008, deadline, (2) the evidence established that Dean knew the return was late, and (3) Dean, knew or should have discovered, as a former CPA and current attorney, that filing a late tax return could result in penalties and interest.

Dean and Kelly argue that the injury was not known and that the cause of action did not accrue until the IRS assessed a tax penalty. Dean and Kelly complain that, in order to accept Berry's argument, the trial court must have presumed that penalties and interest would flow from the missed deadline. They posit that such a presumption was inappropriate in this summary judgment case because it favored the movant. Dean and Kelly assert that "[i]t was impossible for the Estate to discover a legal injury more than two years before it sued because at that time no injury had occurred or would have appeared likely to the executors." In support of that position, they cite three cases, which we address below.

### 1. The Cases Cited by Dean and Kelly Are Distinguishable

The first case cited by Dean and Kelly is *Philips v. Giles*, 620 S.W.2d 750, 751 (Tex. Civ. App.—Dallas 1981, no writ). In *Philips*, Wife's ex-husband, as part of a negotiated divorce settlement, executed a promissory note in her favor for $500,000.00 as compensation for her community property interest in a jointly-owned business. *Id.* at 750. Wife's attorney told her that there would be no tax consequences arising from a divorce settlement with her ex-husband, including the note payments. *Id.* Wife's accountant disagreed and encouraged her to file income tax returns which reported the monthly note payments from her ex-husband as income. *Id.* Relying on the accountant's advice, Wife filed the tax returns and sued the defendant for legal malpractice. *Id.* However, the IRS never assessed any taxes on the money and had not made a determination at the time suit was filed that the note payments were income. *Id.*

*Philips* did not involve a limitations issue. There, the Dallas Court of Appeals ruled that the trial court correctly abated the case because the suit for malpractice was premature, no damages had been established, and it was possible that none would ever be established. Simply put, there was no certainty of any injury-causing conduct on the part of the attorney. Here, as further discussed below, the late-filing was injury-causing conduct because it immediately subjected the Estate to risk of economic harm in the form of penalties and interest.[14] *Philips* does not stand for the idea that an injury cannot be discovered until a penalty is actually assessed.

---

[14]The IRS Instructions for Form 706 state, under the heading "Penalties," "**Late filing and late payment.** Section 6651 provides for penalties for both late filing and for late payment unless there is reasonable cause for the delay." Instructions for Form 706 (Rev. Aug. 2013), *available at* http://www.irs.gov/pub/irs-pdf/i706.pdf; I.R.C. § 6651 (West, Westlaw current through Jan. 16, 2014).

Such a holding would be contrary to the caselaw regarding the discovery rule discussed in detail below.

The second case cited by Dean and Kelly is *Atkins v. Crossland*, 417 S.W.2d 150, 151 (Tex. 1967), which was referenced in *Philips*. In *Atkins*, plaintiff filed suit against an accountant who had prepared the plaintiff's tax returns for several years. *Id.* at 151. The returns were prepared using the cash receipts and disbursements method of accounting rather than the accrual method. *Id.* This increased plaintiff's tax liability, depriving plaintiff of a considerable $12,297.32 in tax savings. *Id.* at 152. Realizing this, the accountant used the accrual method the following year. *Id.* However, he failed to obtain the IRS's consent to change the method of valuation. As a result, plaintiff was assessed a tax deficiency of $12,297.32 based on the cash receipt method of valuation. *Id.* Plaintiff sued, alleging, among other things, that the accountant failed to obtain the required permission to change the method of accounting and failed to inform plaintiff of the situation in time for plaintiff to pay off his accounts payable prior to the year's end in order to reduce his tax liability. *Id.* Plaintiff further claimed that the accountant fraudulently concealed his negligent conduct from plaintiff. *Id.* The lawsuit was filed more than two years after the alleged acts of negligence. *Id.*

In *Atkins*, the court held that the statute of limitations did not begin to run until the tax deficiency was assessed. *Id.* *Atkins* quoted the following test from "54 C.J.S. Limitations of Actions § 168, pp. 122–123," as it was then written:

> "The test to determine when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage does or does not of itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of plaintiff. If the act is of itself not

18

unlawful in this sense, and plaintiff sues to recover damages subsequently accruing from, and consequent on, the act, the cause of action accrues, and the statute begins to run, when, and only when, the damages are sustained; and this is true although at the time the act is done it is apparent that injury will inevitably result.

"If, however, the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, even where little, if any, actual damage occurs immediately on commission of the tort . . . ."

*Id.* at 153. *Atkins* reasoned that the use of the cash method, as opposed to the accrual method "was not in itself the type of unlawful act which, upon its commission, would set the statute in motion. In short, in the absence of assessment, injury would not have inevitably resulted." *Id*.

*Atkins* was decided on a layperson's claim that wrongdoing was fraudulently concealed from him. *Id*. *Atkins* further pointed out that, in the absence of an assessment, there would be no injury at all. *Id*. In *Atkins*, the use of a different accounting method in a timely-filed tax return was not itself unlawful and did not subject the plaintiff to risk of injury *until* the accounting method was found to be unlawful. Here, the late-filing was in and of itself a wrongful act and was a fact known to Dean.

Actual knowledge of damages is not required to start the statute of limitations clock. The relevant inquiry is whether the plaintiff possessed enough facts to put him on notice that he should have conducted an investigation and, if so, whether he exercised diligence in doing so. *See* 54 C.J.S. Limitations of Actions §§ 87, 167, pp. 123–24, 214 (West 1987), § 222 (2013).

The third case cited by Dean and Kelly is *Ponder v. Brice & Mankoff*, 889 S.W.2d 637 (Tex. App.—Houston [14th Dist.] 1994, writ denied). *Ponder* rejected the notion that *Atkins* held that a cause of action does not accrue as a matter law until a tax deficiency is noted in all

19

cases. *Id.* at 642. The plaintiff in *Ponder* alleged that he was given improper advice from a tax attorney suggesting that the IRS would allow certain partnership deductions for the partnership's investments. *Id.* at 643. *Ponder* found that the plaintiff's cause of action accrued on the date of the first notice of adjustment (based on the IRS's rejection of the partnership investment deduction), not from the date of the assessment of the adjustment, because that was the date the plaintiff first became aware that he might be subject to certain tax liabilities. *Id.* *Ponder* approvingly cited to *Hoover v. Gregory*, which wrote:

> *Atkins* clearly focuses on injury—when and how it was established and when it was or could have been discovered. The court determined in *Atkins* that, but for the IRS assessment, Atkins would have sustained no discoverable injury. *See id*.
>
> In our case, appellants focus on the term "assessment," rather than the injury itself. They argue that *Atkins* establishes a general rule that until tax liability is determined, a taxpayer suffers no harm and has no cause of action. We, however, read *Atkins* as establishing a general rule that a taxpayer's cause of action accrues on a fact specific basis when he discovers a risk of harm to his economic interests, whether that be at the time of assessment or otherwise.

*Hoover v. Gregory*, 835 S.W.2d 668, 673 (Tex. App.—Dallas 1992, writ denied). Again, *Ponder* sheds light on the proper inquiry that should be conducted. However, *Ponder* is distinguishable from our case because here, unlike in *Ponder*, the late-filed return was injury-causing conduct, Dean knew that the Form 706 was late, and the claims of malpractice were not brought by a layperson.

### 2. The Relevant Inquiry

"[A] cause of action for legal malpractice accrues when the nature of the injury is discovered or should have been discovered in the exercise of reasonable care and diligence." *Isaacs*, 356 S.W.3d at 560 (citing *Willis*, 760 S.W.2d at 647). "'Discovery occurs when a

20

plaintiff has knowledge of such facts, conditions, or circumstances as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action.'" *Id.* at 562 (quoting *Trousdale v. Henry*, 261 S.W.3d 221, 234 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)). "Knowledge of such facts is, in law, equivalent to knowledge of the cause of action for limitations purposes." *Trousdale v. Henry*, 261 S.W.3d 221, 234 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

A cause of action accrues on a fact-specific basis when the client discovers a risk of harm to his or her economic interests. *Brents v. Haynes & Boone, L.L.P.*, 53 S.W.3d 911, 915 (Tex. App.—Dallas 2001, pet. denied) (citing *Ponder*, 889 S.W.2d 641–42). "The attorney's conduct must raise only a risk of harm to the client's legally protected interest for the tort to accrue; the harm need not be finally established or an inevitable consequence of the conduct." *Id.* at 914–15 (citing *Zidell v. Bird*, 692 S.W.2d 550, 557 (Tex. App.—Austin 1985, no writ)); *see Hall v. Stephenson*, 919 S.W.2d 454, 465 (Tex. App.—Fort Worth 1996, writ denied).

### a.     Analysis

Dean and Kelly argue that their affidavits created a fact issue precluding summary judgment. However, their affidavits were silent as to whether they were aware that a late-filed return could subject the Estate to penalties and interest. Also, although Dean and Kelly said they were not aware of a deadline to file the Form 706 return, the summary judgment evidence establishes that Berry's office advised them by letter that the return "unless extended, [was] due on December 20, 2008."

21

Dean and Kelly next cite to Saunders' affidavit, in which he writes,

> It was also clear to me from John Berry's statements and from his work that John Berry felt that the estate tax return deadline for the Estate could be disregarded without IRS penalties and interest being assessed against the Estate, since his opinion was that adjustments could be made to the Estate values and\or the estate tax return that would eliminate all estate tax liability for the Estate.

Saunders' affidavit is based on his speculation as to what Berry felt, which was presumably developed through review of the summary judgment evidence.[15] However, the summary judgment evidence does not support Saunders' speculation. At no time did Berry indicate that the Estate would not be subject to penalties and interest due to the late filing. Additionally, Dean and Kelly admit that the filing of a Form 706 would have still been required even if the ultimate tax liability was eliminated.[16]

The discovery rule is "a very limited exception to statutes of limitations." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). "The discovery rule tolls limitations only when discovery of an injury is impossible, not when, as here, some injury is known but the full extent of injury and cause are unknown." *Yalamanchili v. Mousa*, 316 S.W.3d 33, 38 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 279 (Tex. 2004); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 435–36 (Tex. App.—Fort Worth 1997, pet. denied); *Bayou Bend Towers Council of*

---

[15]Speculation contained in an affidavit is not evidence. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004).

[16]The Estate's brief argues, "The problem has never been that the full *amount* of the tax penalty was unknown. It is that the Executors (and, according to Mr. Saunders, even Berry himself) never knew *any* penalty would accrue if in fact Berry could have pulled off a no-tax-due filing, as he was touting." However, the brief is not summary judgment evidence, and all of the statements regarding tax liability and reduction of tax liability by Berry were made after the date of accrual. Further, nothing suggests that Berry represented that a late-filing would not result in penalties even if there was no tax liability.

*Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 743 (Tex. App.—Houston [14th Dist.] 1993, writ denied)). Applications of the rule should be "few and narrowly drawn." *S.V. v. R.V.*, 933 S.W.2d 1, 25 (Tex. 1996)

The inquiry into whether the plaintiff should have discovered the injury is objective and "not an inquiry into the plaintiff's subjective belief as to whether the injury could be remedied affordably." *J.M.K. 6, Inc. v. Gregg & Gregg, P.C.*, 192 S.W.3d 189, 197 (Tex. App.—Houston [14th Dist.] 2006, no pet.).[17] We may consider the sophistication of the parties in determining whether the discovery rule has been negated. *McCranie v. Chamberlain, Hrdlicka, White, Williams & Martin, P.C.*, No. 14-04-00793-CV, 2006 WL 278276, at *3 (Tex. App.—Houston [14th Dist.] Feb. 7, 2006, pet. denied) (mem. op.) (citing *Taub*, 75 S.W.3d at 619–20) (sophistication of parties is considered in determining application of discovery rule).

Here, the summary judgment evidence shows that Dean (1) was made aware of the necessity to file the Form 706 since the value of the Estate exceeded the estate tax exemption, (2) was made aware that he would need to hire a CPA to prepare the return, (3) was made aware on May 8, 2008, of the December 20, 2008, deadline for filing the Form 706, (4) was warned on December 18, 2008, that the accountant needed "to get started on tax returns soon," and (5) was again told by Berry on April 24, 2009, that the Form 706 was past due.[18]

---

[17]Berry cites to *United States v. Boyle*, 469 U.S. 241, 251 (1985), for the ideas (1) that an executor has a nondelegable duty to file the return and (2) that the executor's reliance on advice does not excuse him from penalties and interest.

[18]Despite repeated suggestions from Berry that Dean and Kelly hire a CPA, the deadline to file the Form 706 passed without an accountant being retained.

23

Dean knew that the Form 706 was past due. The late filing was wrongful, injury-causing conduct.[19] Discovery of the injury here was not impossible. Knowledge of the late filing should have led Dean, a former CPA and an attorney, to exercise due diligence and make an inquiry into whether the late filing would incur penalties and interest. Such an inquiry would have revealed a risk of harm to the Estate's economic interests. We do not believe that the facts of this case present us with the proper circumstances in which to apply the very narrow exception to the statute of limitations.

We conclude that Berry has shown that the nature of the injury was discovered or should have been discovered in the exercise of reasonable care and diligence before May 1, 2010. Therefore, we find that Berry met his burden to negate the discovery rule on the unique facts and circumstances of this case. We also find that Dean and Kelly's summary judgment evidence failed to raise a fact issue in avoidance of the statute of limitations.

### D.    The *Hughes* Tolling Provision Does Not Apply

Dean and Kelly next argue, for the first time on appeal, that the *Hughes* tolling provision should apply on the facts of this case. However, the provision does not apply to the Estate's claim. In *Isaacs v. Schleier*, we wrote,

> The *Hughes* tolling provision provides that in certain types of legal malpractice actions, the statute of limitations may be tolled until the malpractice litigation is final. [*Murphy v.*] *Mullin*, 168 S.W.3d [288,] 291 [(Tex. App.— Dallas 2005, no pet.)] (citing *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 119 (Tex. 2001)). *Hughes* decided the "proper application of the statute of limitations in a legal malpractice case when the attorney allegedly commits malpractice while

---

[19]"Once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'" *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex. 2011) (quoting *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004)).

providing legal services in the prosecution or defense of a claim which results in litigation." *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 155 (Tex. 1991). Because the attorney's malpractice during litigation could force his client to take inconsistent postures, the court allowed for a tolling of the statute of limitations on the malpractice action until all appeals in the underlying claim were exhausted. *Id.* at 156–57. The reasoning for the tolling is that the outcome of the malpractice suit depends on the outcome of the first litigation, since injury or damage is an element of the claim for legal malpractice. *Id.* at 157. . . .

Several cases have held that the *Hughes* tolling provision does not apply to attorney malpractice claims based on transactional work. *Mullin*, 168 S.W.3d 288, 292–93 ("Because the negligent drafting and/or review of the agreements . . . , if any, is not attorney malpractice committed during 'the prosecution or defense of a claim that results in litigation,' the alleged malpractice in this case is not within a category of legal malpractice cases encompassed within the *Hughes* definition, and, thus, the *Hughes* rule does not apply."). . . .

Again, *Hughes* requires that the attorney allegedly commits malpractice while providing legal services in the prosecution or defense of a claim which results in litigation. *Hughes* assumes the attorney at trial is representing the client in litigation at the time that the malpractice is committed. . . . Further, the malpractice must be committed in the prosecution or defense of the claim which results in litigation.

356 S.W.3d at 562–63. Here, as in *Isaccs*, because the alleged malpractice was not committed in the prosecution or defense of a claim, *Hughes* does not apply.[20]

## III.    Conclusion

For these reasons, we conclude that the trial court's summary judgment in Berry's favor was proper.

---

[20]Dean and Kelly cite *Guillot v. Smith*, 998 S.W.2d 630 (Tex. App.—Houston [1st Dist.] 1999, no pet.), to support their argument that *Hughes* applies. However, *Guillot* is distinguishable. The plaintiff in that case hired a lawyer to represent him in a dispute with the IRS. There, the *Hughes* rule applied because there was ongoing bankruptcy litigation and the alleged malpractice occurred while the lawyer represented the plaintiff on the claim that resulted in the bankruptcy litigation. *Id.* at 633.

We affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:	February 12, 2014
Date Decided:	April 9, 2014